[No. 8684. Department Two. October 12, 1910.]

GEORGIAN A. RIGGS, *a Minor, by her Guardian etc.,*
*Appellant,* v. NORTHERN PACIFIC RAILWAY
COMPANY, *Respondent.*[1]

DEATH—RIGHT OF ACTION—STATUTES—CONSTRUCTION. Under Bal.
Code, § 4828, providing that ·the heirs or personal representatives
may maintain an action for the death of persons caused by the
wrongful act or neglect of another, separate actions cannot be main-
tained by a widow and a child of the deceased.

APPEAL—PRESERVATION OF GROUNDS—WAIVER OF ERROR. Where
separate actions for wrongful death are commenced by the widow in
her own interest and as a guardian *ad litem* for a child of the de-
ceased, when the law gives but one action, and a motion is made
to require the widow to elect between the actions, error cannot be
predicated on failure of the court to order a consolidation of the
actions, instead of requiring an election, where such an order was
not refused and the widow evidently did not desire a consolidation.

EVIDENCE—RES GESTAE. Where a brakeman, who fell from the
side of a car, stated when found that he fell by reason of a loose
hand-hold, and the parties present walked down the track and ex-
amined the cars, their statements upon their return as to the hand-
hold are not admissible as part of the *res gestae.*

MASTER AND SERVANT—NEGLIGENCE—CAUSE OF ACCIDENT—EVIDENCE
—SUFFICIENCY. Statements of the deceased, a brakeman, to the
effect that while in the performance of his duties he fell from the
side of a car by reason of the giving way of a hand-hold, which were
part of the *res gestae,* made immediately after the accident and
in the expectation of death, are sufficient to make a question for
the jury as to the negligence of the company, notwithstanding evi-
dence on behalf of the company that, upon examination of the cars
next day, no defective hand-hold was discovered.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered October 18, 1909, upon the
verdict of a jury rendered in favor of the defendant by direc-
tion of the court, in an action for wrongful death. Reversed.

[1]Reported in 111 Pac. 162.

*Roche & Onstine,* for appellant.

*Edward J. Cannon, Arthur B. Lee, George M. Ferris,* and *Charles E. Swan,* for respondent.

Crow, J.—Action by Georgian A. Riggs, a minor, by Geraldine Riggs Shinn, her guardian *ad litem,* against Northern Pacific Railway Company, a corporation, to recover damages for the wrongful death of plaintiff's father. The trial judge sustained the defendant's motion for a verdict and dismissed the action. The plaintiff has appealed.

George A. Riggs was employed by the respondent corporation as a brakeman. On the evening of February 26, 1907, he fell from a car and received injuries which resulted in his death. He left one child, the appellant Georgian A. Riggs; also a widow, Geraldine Riggs, since married and now known at Geraldine Riggs Shinn, who is the guardian *ad litem* for appellant. This action was commenced by appellant, as minor child of the deceased, by her guardian *ad litem,* for damages in the sum of $2,000. About the same time Geraldine Riggs Shinn, widow of the deceased, commenced a separate action against the railway company, for damages in the sum of $2,000 sustained by her. It is conceded by the appellant that these separate actions were thus commenced to avoid their removal to the Federal court, the respondent being a nonresident corporation. When this action was called for trial, the court, holding the opinion that one action only could be maintained, required the widow, upon motion of the railway company, to announce whether she would waive her right to prosecute her separate action. She, protesting and excepting, waived her cause of action in order that this cause might proceed to trial. The appellant now contends that separate actions may be maintained, and that the court erred in requiring the widow to make and declare her election. There may be some doubt as to whether the order should be reviewed in this action, as in substance it affects the other action only; but as it was made herein, we will consider the question raised.

The right of action awarded to the widow and child is granted by Bal. Code, § 4828, since amended. Rem. & Bal. Code, § 183. The original section, which was the law at the time of the commencement of this action, so far as pertinent, read as follows:

"When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death."

This language indicates an intention to grant one cause of action only, to be prosecuted in a single proceeding by the heirs or personal representatives of the deceased. Were we to hold that a separate action could be maintained by each independent heir, such a ruling might, in some instances, result in subjecting the negligent party to a multiplicity of suits for a single wrongful act. Appellant, however, insists that, if any order was to be made by the trial judge, it should have been one consolidating the actions. No such order was requested by either the appellant or the respondent. It is apparent that the appellant did not desire a consolidation. No order of consolidation was refused by the trial judge, and the question whether a consolidation should have been directed is not before us for review.

Appellant's next contention is that the trial judge erred in sustaining respondent's objection to appellant's offer of proof of certain statements made by several persons after they had examined a car which they thought had caused the injury. The injured brakeman was found lying on the north side of a house track with his feet crushed. In response to questions, he immediately stated that, as he was attempting to ascend a ladder or steps on one of the cars, a loose step or hand-hold pulled out, gave way, caused him to fall and strike his head on a rail; that he was thereby stunned to such an extent that, before he could recover, the car wheels passed over him. Evidence of this statement was admitted without objection as a part of the *res gestae*. Thereafter

several of the parties to whom he had made these statements walked down the track to some cars which they examined. When they returned they made statements as to what they there learned relative to a certain hand-hold claimed to be loose.  Appellant insisted that other witnesses who heard these statements should be permitted to testify to them as a part of the *res gestae*, and now contends that the trial judge erred in excluding their testimony.  We do not think the statements of these parties were any part of the *res gestae*, although made shortly after the accident.  The persons mentioned had inspected the cars and made their statements after reflection and a due consideration of what they had observed.  There is no showing that these statements were spontaneous; that they related to the accident itself; the manner in which it happened, or that they were made without reflection.  They were no part of the *res gestae*, and the trial court properly excluded them.

The controlling question before us is whether error was committed in directing a verdict in favor of respondent. Although we do not find this question free from difficulty, we have concluded that the case was one for the jury.  No witness saw the accident, and the injured man only knew how it happened.  The evidence of appellant's witnesses, in its substance and effect, was, that the injured man was found lying immediately north of the house track; that when asked how the accident happened, he stated that he fell from the car; that "one of the grab irons came loose;" "one end came loose;" "something broke and I fell back and struck my head;" that he became unconscious, and that before he could recover himself, the car passed over and injured him; that he repeated these statements after he had been carried into the depot; that thereafter two or three of the witnesses walked down the house track and examined several freight cars; that they discovered a broken hand-hold on the south side of one box car, and also noticed something that looked like blood on one or two of the south wheels.

The respondent introduced evidence tending to show that
the switching was being done at Toppenish by the train crew
to which Riggs belonged; that several cars on the house
track, located south of the main line, were picked up by the
engine and were being pulled onto the main line, for the
purpose of pushing them back onto a passing track lo-
cated north of the main line, and there connecting them with
other cars; that it was the duty of Riggs to signal the en-
gineer to stop when the engine and cars leaving the house
track had passed a switch and reached the main line, so that
the switch might be then thrown; that the engineer failed to
get any signal from him, but that the engineer, knowing he
had more than passed the switch, stopped without a signal
and remained upon the main track awaiting a signal to back
onto the passing track; that while he was thus waiting, the
conductor came up and informed him of the accident to
Riggs, who had just been found lying immediately north of
the house track, over which the cars had just passed; that
Riggs made no statement as to the cause of the accident; that
the cars were then severed from the engine and left at Top-
penish, while the engine was coupled onto the caboose and
conveyed Riggs to North Yakima, where he died; that the
identical cars which were being switched at the time of the
accident were carefully examined by two of respondent's wit-
nesses early the next morning; that they especially examined
the hand-holds and grab irons, finding them free from de-
fects; that they found blood on the north wheels of a gondola
car, one of the cars which were being moved on the house
track at the time of the accident.

Respondent contends that the box car upon which ap-
pellant's witnesses testified they saw blood and found a de-
fective hand-hold was not one of the cars moved at the time
of the switching and accident; that according to their evi-
dence, the alleged defective hand-hold was on the south side
of a box car; that Riggs fell on the north side of the moving
cars and the house track, and that the alleged defective hand-

hold, if any there was, could not have caused the accident. This contention as to the hand-hold, said to have been found by the appellant's witnesses, is sustained by the undisputed evidence, and that hand-hold must be eliminated as the cause of the accident. On the other hand, the evidence of the respondent's witnesses was that the cars which were being switched when the accident occurred were carefully inspected before and shortly after its occurrence, with the result that no defective hand-holds or grab irons could be found.

The trial judge evidently directed the verdict on the theory that the defective hand-hold found by respondent's witnesses could not have contributed to the accident—a correct conclusion; that the existence of no other defective hand-hold had been proven, and that no negligence was shown on the part of the respondent. In thus holding we think he committed prejudicial error. The statements made by Riggs himself were properly admitted in evidence as a part of the *res gestae*. The only theory upon which they could be admitted was that they were evidence tending to explain the accident and show how it happened. They were made by him immediately after his injury. He said he could not live. He asked for his wife and child, and according to the testimony of respondent's witnesses, repeatedly stated that his fall was caused by the hand-hold giving way. This evidence tended directly to show that there was a defective handhold. Riggs was the only person who knew how the accident happened. His statements, made under these circumstances, were competent evidence, were admitted, and we think tended to sustain the appellant's contention that there was a defective hand-hold.

"It is a well settled rule of the modern law of evidence as applied to civil cases that, where the making of a statement assists to constitute the transaction or to prove *per se* a relevant fact, the declaration is competent." 16 Cyc. 1152, and cases cited.

Unsworn statements which clearly constitute a part of the

*res gestae* are admissible as evidence in exception to the usual hearsay rule. Discussing the principle of this exception to the hearsay rule, Mr. Wigmore, at § 1747, of his work on Evidence, says:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. The ordinary situation presenting these conditions is an affray or a railroad accident. But the principle itself is a broad one."

In a foot note he further suggests that the theory is thus somewhat analogous to dying declarations. Appellant's cause should not have been withdrawn from the consideration of the jury simply because her witnesses made a mistake in looking at the wrong car where they found a hand-hold which could not have contributed to the injury, or because respondent's witnesses testified that on examination made the next day they found no defective hand-holds on the particular cars which were being moved at the time of the accident. If Riggs had lived, and in an action for damages had testified to the identical statements he made immediately after the accident, his evidence would certainly have been sufficient to show the existence of a defective hand-hold and carry his case to the jury. Whether the weight of such evidence would be sufficient to overcome that offered by the respondent would be a question for the jury, and not for our consideration.

According to the statement of Riggs, he was engaged in the performance of his duties. An accident occurred without fault of his, by reason of a defective appliance or instrumentality furnished by his master for his use. The instrumentality being defective, caused his injuries. Under the rule announced in *LaBee v. Sultan Logging Co.*, 51 Wash. 81, 97 Pac. 1104, this evidence was for the consideration of the jury. We there said:

"Where the facts of the case are such as to eliminate blame on the part of the servant or his fellow servants, but show *prima facie* neglect on the part of some one, we think the master should be put to his proofs to show that the blame is not his, just the same as he would be were the injury to a stranger. Such a rule casts the burden upon the person who is in a position to know the facts, and who can make the proofs by direct and positive evidence, while the rule contended for by the appellant compels the resort to indirect and circumstantial evidence. . . . The injury itself proves nothing; it may have been the fault of the servant. But in a case where the servant eliminates any fault on his part by showing that the injury was caused by the giving way of an instrumentality furnished him with which to work, while he was using it for the purposes intended, and in the manner directed, he shows that the fault is in the instrumentality itself for which the master is *prima facie* responsible. The case differs from an ordinary case of injury only in the matter of proof. In each case, of course, a *prima facie* case of negligence against the master must be made out, but in the one it is made out by showing the injury, and eliminating negligence on the part of the servant and his fellow servants, while in the other it is made out by direct evidence of negligence on the part of the master."

The judgment is reversed, and the cause remanded for a new trial.

Rudkin, C. J., Dunbar, Mount, and Parker, JJ., concur.