[No. 7531.  Decided May 15, 1909.]

JAMES I. ST. JOHN, *by his Guardian etc., Respondent,* v.
CASCADE LUMBER & SHINGLE COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—ASSUMPTION OF
RISKS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In an ac-
tion by an offbearer from a band saw, who was injured after placing
a slab on the live rolls, by reason of the head block of the saw car-
riage striking the same when it was "gigged back," the questions as
to the negligence of the master in furnishing a safe place, of the
sawyer in not observing the position of the slab, and the assumption
of risks and contributory negligence of the plaintiff in not truly
placing the slab on the rolls, are for the jury, where it appears that
the log being sawed was a short one held by the rear and middle
blocks, making the operation more dangerous than usual, that the
plaintiff was required to perform other duties, and after placing the
slab, as he supposed correctly, was injured while attempting to
remove a splinter from the saw as the log was rapidly moving back,
and where plaintiff had worked in that position but three days.

TRIAL—INSTRUCTIONS—CONSIDERED AS A WHOLE. Error cannot
be predicated on separate instructions where, considered as a whole,
they properly state the law.

Appeal from a judgment of the superior court for Snoho-
mish county, Black, J., entered March 6, 1908, upon the ver-
dict of a jury rendered in favor of the plaintiff, after a trial
on the merits, in an action for injuries sustained by an off-
bearer in a sawmill.  Affirmed.

*Richard Stevens Eskridge* and *Brownell & Coleman,* for ap-
pellant.

*Cooley & Horan,* for respondent.

CROW, J.—Action by James I. St. John, a minor, by his
guardian, against Cascade Lumber & Shingle Company, a
corporation, to recover damages for personal injuries. From
a judgment in plaintiff's favor, the defendant appeals.

The appellant, respondent's employer, owned and oper-

[1]Reported in 101 Pac. 833.

ated a sawmill, equipped with a band saw, log carriage, systems of live rollers, and other machinery. The saw and carriage were under the control of appellant's head sawyer, who directed their movements. The live rollers, parallel to the carriage-way, were immediately to the rear of the saw and operated by respondent as offbearer. The log carriage was equipped with three head blocks. The distance between the front and center block was about twelve feet, and that between the center and rear blocks about ten feet. At the time of the accident, a log twelve feet in length, placed on the center and rear blocks, was being sawed. When a cut was made, the slab would be taken in charge by respondent, whose duty it was to place it on the live rollers in a true position, and transfer it down the mill to the other operatives. When a log was on the center and rear blocks, and a slab fell to the live rollers, the head block would at that instant be twelve feet further from the head sawyer than would the forward end of the slab. At the time of the accident causing respondent's injuries, a slab in some unknown manner assumed a somewhat angling position on the rollers, and when the head sawyer caused the carriage to rapidly return or "gig back," the front head block collided with the slab and caused it to return towards the saw, where it struck and injured respondent.

The appellant first contends that the trial court erred in denying its motion for a nonsuit, its challenge to the sufficiency of the evidence, and its motion for a new trial. In support of these assignments, it insists that respondent's primary duty was to look after the moving slab until it had safely met and passed the front head block of the returning carriage; that his other duties were secondary; that the slab was under his sole control; that the band saw revolved at a terrific rate of speed; that if the returning carriage should strike and drive the slab against it, the resulting effect might seriously damage the saw or injure appellant's employees, and that respondent was guilty of gross negligence

in turning his back towards the slab before it had safely met and passed the front head block of the returning carriage.

While it is true that the duty devolved upon respondent to operate the live rollers and see that the slab so moved thereon as to safely pass the returning head block, he also had to perform other important duties hereinafter mentioned. The evidence shows that, at the time of the accident, appellant was sawing a short log which rested on the rear and middle blocks; that extra danger attended the sawing of a log so placed, as the front head block which would stop beyond the slab might strike it when returning; that respondent had been instructed to watch for and remove slivers liable to obstruct the saw; that he had to do so before the carriage had returned; that it was his further duty to keep the rollers free from bark and sawdust, also to operate a guard which protected the saw; that these duties frequently caused his attention to be diverted from the moving slab; that at the time he was injured he had his back towards the slab and carriage; that he was a minor not quite nineteen years of age; that he had worked as offbearer only about three days, although he had previously worked for some time in the mill in other capacities, and that the head sawyer had instructed him to perform all these duties.

Respondent testified that he had started the slab down the rollers in a true and safe manner, as he believed; that he was looking in the opposite direction towards the sawyer, and that he could not remember just how he was employed at the instant when the plank struck him. One Gustafson, another employee, located some distance down the mill, but with respondent in his view, testified that at the time the respondent was struck he was attempting to remove a splinter from in front of the saw, which duty caused him to turn away from the slab and carriage. The evidence shows that, when the log was being sawed, the carriage moved about as rapidly as a man would walk, but that when it returned, or "gigged back," it moved about as rapidly as a man

could run. At the instant when the cut had been completed and the slab had fallen to the rollers, the front head block was about twelve feet ahead of the front end of the slab, and nearly twenty-five feet from the saw. The slab would then start down the rollers as rapidly as a man could walk, and the carriage would "gig back" as rapidly as he could run.

As above stated, there was evidence to show that the respondent's duty required him to remove splinters which had fallen in front of the saw, and to do so before the carriage returned. His contention is that the head sawyer should have kept a lookout for these splinters, and should also have observed the relative positions of the receding slab and returning head block so that he might stop the carriage when necessary to avoid any threatened danger; that without doing so, he caused the carriage to return so rapidly and violently that it struck the slab and drove it against repondent while he, in the performance of one of his duties, was in a place of danger; that the head sawyer was therefore guilty of negligence; that he was at the time a vice principal, performing the nondelegable duty of his master, and that appellant is liable. Appellant, however, contends that it was not the head sawyer's duty to watch the course of the slab moving down the rollers; that such duty devolved solely upon respondent; that respondent was guilty of contributory negligence; that he assumed the risk of the necessary dangers attending his. employment; that if the head sawyer was in any manner negligent, his negligence was that of a fellow servant, and that respondent is not entitled to recover. Upon all the evidence, which was conflicting, and which we have carefully considered, we conclude that these various contentions raised issues of fact, which were properly submitted to the jury, and that we would not be justified in disturbing their verdict.

If it was not the head sawyer's duty to observe the relative positions of the receding plank and returning carriage, or to watch for slivers, which would endanger the saw, and which

respondent was instructed to remove, and if at the same time respondent was obliged to perform all the duties required of him, some of them hazardous, such a condition would instigate the suggestion that the appellant was negligent in failing to provide the respondent with a reasonably safe place in which to work. Although the respondent seems to have been a very intelligent young man, he had only three days' experience in the performance of his duties, and we cannot hold, as a matter of law, that he assumed the dangers of his employment, in the face of evidence which makes it at least questionable whether the appellant had fully discharged its duty in providing him a reasonably safe place in which to work. There was just as much, if not more, reason for imposing extra duties upon the head sawyer, than there was for imposing them upon the respondent. The head sawyer himself advised and directed the respondent as to the nature and performance of his duties. When the respondent, in the performance of one of them, was in a position of danger, was removing a splinter, as stated by Gustafson, and according to respondent's evidence was entitled to rely upon the head sawyer to so control the movements of the carriage as to protect him and avoid accident, it was certainly for the jury to determine whether the head sawyer, who was for such purposes appellant's vice principal, was negligent in causing the violent return of the carriage, and whether appellant was negligent in failing to provide the respondent with a reasonably safe place in which to work. Without further discussion of the evidence, which was conflicting, and all of which we have carefully considered, we state our conclusion that the motion for a nonsuit, the challenge to the sufficiency of the evidence, and the motion for a new trial, were properly denied.

Some assignments of error are based upon the admission and rejection of evidence. Without entering upon a detailed discussion of these assignments, which we have carefully considered, we hold that no prejudicial error was committed in

this regard.   The manner in which appellant has prepared its brief, and presented this appeal, convinces us that its main reliance for a reversal and dismissal is predicated upon the alleged insufficiency of the evidence to sustain the verdict.

Appellant has also presented other assignments of error, based upon instructions given, and requested instructions refused.   Its contention that an instruction on the question of contributory negligence was indefinite, incomplete, and misleading, is without merit, as that issue was properly covered by other instructions given.   The same observation is pertinent to the appellant's other objections.   Although particular instructions to which our attention has been directed might be subject to some criticism when separately considered, we think the entire body of the instructions fully and correctly stated the law pertinent to all the issues of this case.

We find no prejudicial error in the record.   The judgment is affirmed.

RUDKIN, C. J., MOUNT, DUNBAR, and FULLERTON, JJ., concur.

CHADWICK, GOSE, MORRIS, and PARKER, JJ., took no part.