[No. 9827.   Department Two.   December 2, 1911.]

GILBERT KING, *a Minor, by his Guardian etc., Respondent,*
v. PAGE LUMBER COMPANY, *Appellant.*[1]

TRIAL—MOTION FOR NONSUIT—PROVINCE OF COURT.   Upon a motion for a nonsuit, the evidence must be construed most favorably to the plaintiff.

MASTER AND SERVANT—NEGLIGENCE—FAILURE TO INSTRUCT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.   The master's negligence and the contributory negligence of the plaintiff are for the jury, where plaintiff was set to work as a dogger on a saw carriage without any previous experience or instructions, and was injured through erroneously setting a dog and attempting to reset it as the sawyer suddenly started the log through the saw when plaintiff was near the saw.

MASTER AND SERVANT—FELLOW SERVANTS—VICE PRINCIPAL.   A sawyer in charge of a saw crew is not a fellow servant of a dogger on the carriage, but a vice principal, as to the nondelegable duties of the master with respect to starting the machinery and giving warning to those in danger of injury therefrom.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.   A verdict for $6,900, reduced by the trial judge to $4,500, will not be held excessive, where the plaintiff, a young man twenty years of age, lost all of the first three fingers of his right hand, and the fourth finger was injured and rendered useless.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered March 21, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover for personal injuries sustained by an employee in a mill.   Affirmed.

*James B. Murphy,* for appellant.

*H. G. & Dix H. Rowland* and *Davis & Neal,* for respondent.

CROW, J.—Action by Gilbert King, a minor, by Mary King, his guardian *ad litem,* against Page Lumber Company, a corporation, to recover damages for personal injuries.   From

[1]Reported in 119 Pac. 180.

a verdict and judgment in plaintiff's favor, the defendant has appealed.

Appellant contends the trial judge erred in denying its motion for nonsuit and a directed verdict.   In presenting its motions, appellant contended no negligence upon its part had been shown; that respondent was guilty of contributory negligence; that he assumed the risk, and that if any negligence on the part of any person other than respondent was shown, such negligence was that of respondent's fellow servant.   On July 28, 1910, appellant owned and operated a sawmill equipped with machinery, including a saw carriage, about forty feet in length and ten feet in width, upon which logs were placed for sawing.   Upon this carriage were three blocks against which the logs rested when about to be sawed. In connection with each block was a dog, a mechanical appliance designed to fasten and securely hold the log against the blocks.   This dogging apparatus consisted of an upright iron bar, about three and a half feet long, one inch thick, and three inches wide, which curved back towards the east side of the carriage and away from the west side where the saw was operated and the sawyer stood.   In the upright bar were holes in which the dog, an appliance used for holding the log, could be adjusted.   In connection with each bar and dog was a lever by which the dog could be drawn down and firmly set into the log.   This dogging apparatus was operated by an employee known as a dogger, who controlled the dog with one hand and the lever with the other.   While performing his work the dogger stood on the east side of the carriage opposite the sawyer, who with a lever operated and controlled the carriage.   When a log had been securely dogged, the sawyer caused the carriage to move forward so that the log could be cut by a band saw which, in plain view, passed over certain pulleys.

The respondent, a young man nineteen years and six months of age, had for some time been employed as a laborer in and about the mill, had never worked on or about the saw

carriage, and had no experience as a dogger. About half past seven on the morning of the accident, the foreman of the mill, without giving him any instructions, directed him to go upon the carriage and work as dogger. Respondent informed the foreman he had no experience in that work. One Grant, the sawyer, gave him no instructions other than to inform him the work was a hurry-up job.

About eleven o'clock of the same morning, a small cedar log was placed on the carriage. Respondent set and secured the rear dog, but caused it to extend too far across the log. When the log had been sawed to within about four or five feet of the dog, the sawyer noticed the saw would strike the dog. Thereupon he reversed the carriage and, with a motion of his hand, directed the respondent to take out and reset the dog. Respondent did so, but again placed it too far across the log toward the line of the saw. Again the sawyer stopped the carriage and, by the same motion, impatiently ordered respondent to take out the dog. The sawyer testified he also leaned over and told respondent, then about four feet away, to take out the dog and leave it out. Respondent testified he did not hear this order. Thereupon respondent removed the dog and the sawyer immediately started the carriage. Respondent, thinking he was again directed to reset the dog, continued to do so, but just as he brought the dog down upon the log, the saw struck and injured him. The sawyer noticed respondent's last movement in time to stop the carriage and prevent the dog from breaking the saw, but not in time to prevent respondent's injury.

Respondent's allegations of negligence in substance were, (1) that appellant did not instruct him or warn him of the dangers incident to his employment; (2) that the sawyer, who at the time was acting as appellant's vice principal, suddenly and without warning or notice to respondent, started the carriage towards the saw.

We have carefully examined the evidence and conclude the issues of appellant's alleged negligence, respondent's alleged

contributory negligence, and assumption of risk, were for the consideration of the jury, and that the motions were properly denied. Appellant's counsel have presented their contentions in a thorough and able manner in their brief, and also on oral argument. They seem impressed with the idea that the evidence utterly fails to show negligence on appellant's part, but that it does show respondent's negligence. The question before us is not whether the weight and convincing force of the evidence was with appellant, but whether there was evidence sufficient to require a submission of the issues of fact to the jury and sustain their verdict. In determining this question it is the duty of an appellate court to regard and construe the evidence most favorably to respondent. In *Newcomb v. Puget Sound etc. Boiler Works*, 54 Wash. 419, 103 Pac. 456, this court in passing on the appellant's motions for a nonsuit and a directed verdict, said:

"The appellant's brief shows its positive conviction that the evidence overwhelmingly preponderates in its favor. . . . The appellant's mistake on this appeal is that it fails to appreciate the force of the evidence given by the respondent, which of itself is sufficient to sustain the verdict. The jury were entitled to credit him. . . . The most that can be said on behalf of appellant is that the evidence was conflicting, the respondent's statement being denied by other witnesses."

The evidence, although disputed, was unquestionably sufficient to show respondent was inexperienced; that he had worked as dogger only a few hours; that he received no instructions other than to be told his work was a hurry-up job; that the setter who worked on the carriage found it necessary to aid him, and did so; that the log being sawed at the time of the accident was somewhat rotten and difficult to dog; that after respondent had improperly set the dog the first time, the sawyer with a motion of his hand directed him to remove and reset it; that respondent did so, but replaced the dog too far across the log; that the sawyer again stopped the carriage; that respondent was then only about

four feet from the saw; that with considerable impatience the sawyer repeated his former signal made with his hand; that respondent removed the dog; that the sawyer immediately started the carriage; that respondent was then standing with his back towards the saw, engaged in the supposed discharge of his duties; that he again attempted to set the dog, and was struck by the saw. The sawyer and other witnesses on behalf of appellant testified appellant had no code of signals to the dogger for use by the sawyer. The only signals which appear to have been given by the witnesses upon the trial in the presence of the jury are not shown and manifestly cannot appear in the record. The sawyer testified he leaned over the saw when giving his last order, and told respondent to take the dog out and leave it out. Two other witnesses, not quite so close to the sawyer as was respondent, testified that the sawyer spoke to respondent, and in their examination in chief testify to what he said, but upon their cross-examination they seem rather to have noticed him speaking, and to have known what he would say, and probably did say, by reason of their experience, and their previous observation of proper methods under such conditions. The carriage was stopped, but it is conceded the mill was running so noisily that it was practically impossible to understand spoken words; and that, by reason of this fact, motions and signals were generally used. Respondent positively testified he did not hear any oral order given by the sawyer.

Taking all the evidence into consideration, it was for the jury to determine whether appellant was negligent as claimed, whether respondent was properly instructed and warned, whether he understood his duties and the dangers attending his employment, whether he assumed the risk, and whether he was guilty of contributory negligence. Respondent was young and inexperienced. He had made two mistakes in placing the dog. He made a third trial, and had he completed his efforts would probably have failed again.

The sawyer started the carriage before he had replaced the dog. He testified he had told respondent to take the dog out and keep it out; that he did take it out; that he stepped back on the carriage a foot or two; that he seemed to be out of danger, and that he—the sawyer—believed respondent understood the verbal order. It is nevertheless apparent that the sawyer immediately started the carriage, and that within a moment or two the respondent, who said his back was toward the saw, was injured while trying to reset the dog.

Appellant further contends the sawyer was not its vice principal but the fellow servant of respondent, as they were jointly engaged in the common undertaking of sawing logs. A sawyer and dogger under certain conditions may be fellow servants, but this court had repeatedly announced the rule that the sawyer, when charged with a nondelegable duty of his master, becomes and is a vice principal. *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Dossett v. St. Paul & Tacoma Lumber Co.*, 40 Wash. 276, 82 Pac. 273; *Eidner v. Three Lakes Lumber Co.*, 45 Wash. 323, 88 Pac. 326; *Maloney v. Stetson & Post Mill Co.*, 46 Wash. 645, 90 Pac. 1046; *St. John v. Cascade Lumber & Shingle Co.*, 53 Wash. 193, 101 Pac. 833.

There was evidence that the carriage moved about five miles an hour during the process of sawing; that when the sawyer suddenly and unexpectedly started the carriage, respondent was about four feet from the saw; that with his back towards the saw he was about to replace, reset, and fasten the dog; that the sawyer with a motion of his hands had repeated the identical signal he had theretofore given for withdrawing and resetting the dog; that while respondent was thus engaged, he was in a position of safety as long as the carriage remained stationary; that the sawyer started the carriage without notice or warning, and that respondent was thereby exposed to sudden and unexpected danger and was injured. While respondent was thus employed, a non-delegable duty was imposed upon the master not to utilize

any agency which would subject him to unnecessary danger. When the sawyer did place such an agency in operation, he was not acting as respondent's fellow servant, but as vice principal of the master, and his failure to then and there perform the nondelegable duty of the master was the negligence of the latter.

"We have held that where a master employs a number of servants to work with a dangerous agency and gives to one servant exclusive control of the agency with power to direct where the other servants shall work and the manner in which they shall work, the one given control is the representative of the master, that his negligence is the negligence of the master, and any one injured by reason of such negligence, not contributed to by him, has a cause of action against the master for the injury so suffered." *Dyer v. Union Iron Works*, 64 Wash. 577, 117 Pac. 387.

See, also, *Comrade v. Atlas Lumber & Shingle Co.*, 44 Wash. 470, 87 Pac. 517; *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765.

Appellant contends that instructions given by the court constituted prejudicial error, in that no evidence was admitted on which they could be predicated, and that an immaterial issue was thereby submitted, tending to confuse the jury in reaching their verdict. We find no error in this regard. Appellant seems to have fallen into error in its understanding of the evidence. In any event, we are satisfied the instructions given, when considered as a whole, fairly stated the law and were free from prejudicial error.

The jury returned a verdict for $6,900, which the trial judge, in passing upon appellant's motion for a new trial, reduced to $4,500. Judgment, with respondent's assent, was entered for the latter sum. Appellant now contends the damages are still excessive. Respondent at the time of his injury was not quite twenty years of age. He lost all of the first three fingers of his right hand, and the fourth finger was so severely injured as to render it practically useless. The trial judge made a material reduction. He understood the

nature, extent, and permanent results of the injury, and we cannot conclude the judgment is so excessive as to require a further reduction by this court.

The judgment is affirmed.

Dunbar, C. J., Chadwick, Ellis, and Morris, JJ., concur.