[No. 16431.   Department One.   October 8, 1921.]

W. G. PATRICK, *Respondent*, v. SPOKANE & EASTERN RAILWAY & POWER COMPANY, *Appellant*.[1]

MASTER AND SERVANT (130)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE—PRESUMPTIONS AND BURDEN OF PROOF. Though an inference of negligence may arise from proofs of an accident causing an injury when attended with certain circumstances, even if there is no direct proof of specific negligence, an inference of negligence sufficient to make a prima facie case does not arise from the mere happening of an accident.

SAME. A workman in a railway repair shop who is injured by being struck by a casting which fell from a traveling crane cannot recover merely on the ground that the accident showed negligence on the part of the master, where there was no proof that the crane was furnished for plaintiff's use, or that he was using it at the time, or that the castings were improperly tied, the evidence, however, showing that plaintiff had left a place of safety, and entered into the zone of danger merely to expedite the return of the crane for use at the point where he was engaged in working.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered October 5, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a railway repair shop.  Reversed.

*Graves, Kizer & Graves*, for appellant.
*Tustin & Chandler*, for respondent.

FULLERTON, J.—The appellant, Spokane & Eastern Railway & Power Company, is engaged in the business

[1]Reported in 201 Pac. 23.

of operating a railway, and maintains a repair shop at the city of Spokane. This repair shop is of considerable size, and is equipped with an electrically operated traveling crane, used for the purpose of moving heavy articles from one part of the shop to another. Prior to October 3, 1919, the appellant had let a contract for the reconstruction of a bridge on its railway line, and on the day named the employees of the bridge contractor brought to the appellant's shop a number of iron castings upon which certain shop work was necessary to be done. The castings were brought to an entrance door of the shop on a push car. The machinery necessary to do the work the castings required was at the opposite end of the shop, and to carry the castings across the building, the traveling crane was brought into service. To sling the castings for carriage, a rope some two inches in diameter was used. The method by which the rope was fastened to the castings and carried across the building was illustrated to the jury and is not very clearly depicted in the record, but as we gather it, the method was this: The rope was doubled and laid on the floor of the building; the castings, which were rectangular in shape and some four feet in length, were laid across the doubled rope in a sufficient number to make a load; the two ends of the rope were then twisted and the twisted end put through the loop at the double end and drawn tight; a chain, with a hook on its end, leading down from the crane was then fastened into the rope; the load was then drawn upwards towards the crane to a height of about ten feet, and from thence was carried across the building by moving the crane. The crane was operated from the floor of the building by means of a rope or chain fastened to the electrical connections; the operator walking in front of the load and some twelve feet to one side. This walk way was kept clear at all times,

and was a common passageway used by the appellant's employees in crossing the building.

The respondent was an employee of the appellant. At the time the castings were brought to the building, he was working upon one of the appellant's electric engines. He had loosened the fastenings of a motor and desired the use of the crane to lift the motor from the engine. On looking for the crane he saw it in use by the persons carrying the castings. It had just been started on its way with a load, and, thinking to obtain it when it reached its destination, he followed after it, walking in the usual walk way. As he reached a place about opposite the load, the castings slipped from the rope and one of them, striking some object in its fall, glanced in his direction, striking him on one of his legs and severely injuring him. In this action the respondent seeks recovery for the injury suffered. He was successful in the court below, and this appeal is from the judgment rendered in his favor.

The assignments of error question only the sufficiency of the evidence to justify the verdict. In his complaint the appellant alleged that the castings were "tied or bound together in a careless and negligent manner, rendering them loose and insecure in the sling in which they were contained," and that the appellant's foreman operated the crane "in a careless and negligent manner, jerking said sling," thereby causing the castings to fall therefrom. To sustain these allegations of negligence, there is no direct evidence in the record. While the manner in which the castings were slung in the rope was shown, no one testified that the method used was not the usual or ordinary method for slinging such articles for carriage, nor did anyone testify that there was anything careless, negligent or inherently dangerous in the manner in which the castings were tied or bound together. Nor did anyone testify

that the crane, after the load had been fastened there-
to, was operated in a careless or negligent manner
causing it to jerk the sling, or in a careless or negli-
gent manner in any other respect—on the contrary,
the direct evidence is that the crane was operated in
the usual and customary manner. If, therefore, there
is evidence of negligence in the record, the proofs
thereof are indirect; it is an inference arising from
the fact that the castings fell from the sling while in
the process of carriage.

But this court has never heretofore held, and it is
not the general rule, that an inference of negligence
sufficient to make a *prima facie* case arises from the
mere happening of an accident although it cause an in-
jury. We have held that such an inference may arise
from proofs of an accident causing an injury when at-
tended with certain circumstances, although there is
no direct proof of specific negligence on the part of
the master. For example, in *La Bee v. Sultan Logging
Co.*, 47 Wash. 57, 91 Pac. 560, 20 L. R. A. (N. S.) 405;
51 Wash. 81, 97 Pac. 1104, the servant was injured by
the breaking of a cable used for loading logs upon
railway cars. In addition to the happening of the ac-
cident causing the injury, it was shown that the cable
was one furnished by the master for the servant's use,
and that it broke while the servant was using it for
the purpose for which it was furnished him and in the
manner he was directed by the master to use it. It
was held that the proofs made a *prima facie* case suffi-
cient to sustain the verdict of the jury in favor of the
servant, notwithstanding it was not shown that the
master had failed to exercise reasonable care in the
selection of the cable or reasonable care in keeping it
in a condition suitable for use. So in *Cleary v. General
Contracting Co.*, 53 Wash. 254, 101 Pac. 888, it was
held that a servant could recover for an injury caused

by the fall of a scaffold on which he was working, on a showing that the scaffold was furnished him by the master for his use and that he was using it for the purposes intended and in the manner intended, although he did not show that the master had not exercised reasonable care in its construction and maintenance. To the same effect is *Riggs v. Northern Pac. R. Co.*, 60 Wash. 292, 111 Pac. 162. In these cases the doctrine known as *res ipsa loquitur* was applied. But the doctrine as there defined, and as it has elsewhere been defined by us, is not a rule of substantive law, but a rule of evidence merely. Nor is the rule one of universal application to be invoked in all cases of accident and injury. As we said in *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838, L. R. A. 1917E 178 (quoting from *Losie v. Delaware & H. Co.*, 142 App. Div. 214, 126 N. Y. Supp. 871):

"The doctrine of *res ipsa loquitur* was not intended to exempt the plaintiff from the burden of proving affirmatively negligence, or circumstances making negligence a legitimate, if not an irresistible, inference. In the language of Judge Cullen in *Griffen v. Manice*, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, its 'application presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence.' It is not the accident, but the manner and circumstances of the accident, that justified the application of the maxim. The fact of the casualty and the attending circumstances may themselves furnish all the proof of negligence that it is necessary to offer; but when, as in this case, they do not, a plaintiff must prove facts and circumstances from which the jury may fairly infer negligence as the cause of the accident. 'In no instance can the bare fact that an injury has happened, of itself and divorced from all surrounding circumstances, justify the inference that the injury was

caused by negligence.' *Benedick v. Potts*, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478.''

Tested by these principles, we think it is at once manifest that the evidence was insufficient to charge the appellant with negligence. All that is shown that tends in that direction is the happening of the accident and the resultant injury. There is no showing that the instrumentality which gave way and caused the injury was furnished by the master for the respondent's use, nor was he in fact using it at the time of the injury. Nor is there any other circumstance that can be said to bring the facts within the rule stated. It might have been so had the respondent's place of work been rendered unsafe by the act of moving the castings. But it was not so rendered. When the castings started on their journey the respondent was in a place of safety, and he was injured because he voluntarily left this place of safety and entered into the zone of danger. Therefore, to warrant a finding of negligence on the part of the master, there should have been some proof other than the mere happening of the accident; some direct evidence independent of the accident reasonably indicating a neglect of duty.

We have not overlooked the argument of the respondent's learned counsel to the effect that the method of tying the castings was in itself gross negligence; that the rope, in addition to being placed around the center of the castings, should have been placed over their ends, so as to prevent them from slipping from the rope in case they became unbalanced. But this is but arguing from effect to cause. Had they been so tied, and had they nevertheless slipped from the fastenings, the argument would be open that they were insecurely tied. Indeed, it would seem that no matter what method of carriage was used, or what care was exercised in providing the carriage, if the

carriage gave way it could be argued against the method used, with all the force of the argument against the method used here, that the carriage was insecure and thus implied negligence.

Our conclusion is that the judgment appealed from should be reversed, with instructions to enter a judgment that the plaintiff take nothing by his action. It is so ordered.

PARKER, C. J., MACKINTOSH, BRIDGES, and HOLCOMB, JJ., concur.