[No. 21208. Department Two. September 4, 1928.]

PHILLIP McGINN, *Respondent,* v. NORTH COAST STEVE-DORING COMPANY, *Appellant.*[1]

[1]Reported in 270 Pac. 113.

*Stephen V. Carey,* for appellant.

*Louis E. Haven* and *Adam Beeler,* for respondent.

*Lane. Summers, Huffer, Hayden, Merritt, Summers & Bucey, Wm. Martin,* and *J. O. Davies, amici curiae.*

Holcomb, J.—Respondent sued appellant, a Washington corporation engaged in the stevedoring business, for damages for injuries received while working as a stevedore on board the steamship "Georgine," while unloading cargo at Seattle, Washington, on March 12, 1926. There was a verdict and judgment for $7,500.

Since the complaint is not attacked by appellant as not alleging liability on the grounds of negligence, except in one particular where it is claimed the evidence offered and admitted by the court departs from the complaint, and another instance in which a specification of negligence was abandoned by respondent at the trial, for the sake of brevity we shall only recapitulate the allegations very briefly.

It was alleged that the personal injuries sustained by respondent occurred while engaged in discharging cargo under the direction of one Wicks, as foreman, employed by appellant to supervise the work, and that, in prosecuting the work, appellant used the ship's gear, together with its own appliances, tackle and cargo-hook. These allegations were admitted. The evidence, however, undisputedly shows that the cargo-hook and tackle were furnished by appellant, and taken on board the ship on the morning of the casualty.

It is also alleged that appellant, through its foreman, directed respondent and the other stevedores to remove a certain case of glass, weighing from eighteen hundred to two thousand pounds, from the hold of the ship, and in obedience to such directions, respondent and the other stevedores placed slings around the case of glass to which slings the cargo-hook was attached. To this cargo-hook, was fastened a bull-line, a fall-rope, and a midship-rope, operated by the ship's winches on deck. The hoisting was done by winch drivers on signals from the foreman; and when the case of glass had been

hoisted to a height of approximately two feet, and as the plaintiff and other stevedores were steadying the case of glass, a certain ring broke, letting the cargo fall and causing the tackle and cargo-hook to fall and strike respondent, inflicting the injuries described.

Appellant admitted the allegation as to removing the glass case from the hold; that the work was being done under the direction of Wicks; that, during the progress of the work, the eye in the swivel of the cargo-hook pulled loose, causing certain of the tackle and the cargo-hook to fall and the cargo-hook in falling struck respondent.

The paragraph specifying the negligence of appellant alleged as follows:

(1) That appellant failed to provide and maintain suitable appliances and negligently used a weak and defective ring which the foreman knew, or in the exercise of due care should have known, to be unsafe and unfit for use.

(2) That appellant, through its foreman, negligently failed to inspect the ring before starting the unloading operations when an examination would have revealed the defective condition of the ring.

(3) That appellant carelessly placed too great a strain on the ring by attempting to hoist too heavy a load.

A fourth ground of negligence was specified respecting failure to properly superintend and operate the winches on deck in a careful manner, which, at the conclusion of the respondent's case, upon motion of appellant, was withdrawn from the consideration of the jury with the consent of respondent.

All these allegations of negligence were denied by appellant.

At the conclusion of the evidence, and before submission to the jury, appellant moved to withdraw the

fourth ground of negligence for want of proof, which was sustained; and after its challenge to the sufficiency of the evidence to sustain a recovery in favor of respondent had been overruled, moved also to withdraw from the consideration of the jury the third allegation of negligence for want of proof to sustain it. The court refused to grant the motion as to the third ground of negligence.

Appellant affirmatively pleaded that such injuries and damages as respondent sustained were caused by risks of his employment which he assumed, which affirmative answer was denied by the reply.

The evidence shows that the work of unloading was being done through hatch No. 1, and the large case of glass in question was stored about eighteen feet from the hatch on the lower deck, which was about eighteen feet in height. One sling was placed around each end of the case and fastened to a hook which connected with the cargo-ring. To the cargo-ring, was attached a bull-rope or backer-rope, a fall-rope, and a midship-rope, these various ropes being connected with three different winches on deck. The crew had been unloading cargo for about two hours when this casualty happened. The crate of glass in question weighed from eighteen hundred to two thousand pounds. The cases of glass removed previously were of various sizes, but were generally much smaller and lighter than the one which caused the ring or link to break. The crate of glass which broke the ring was about two feet longer than any other crate they had unloaded that morning.

One Ericksen was operating the winch attached to the bull-rope. One Jensen was operating the winch attached to the midship-rope. One Hansen was operating the winch attached to the fall-rope. At the time of the accident, the winch operated by Hansen was stationary. At the hatch on the upper deck, one Free-

man was hatch tender to give signals to the various winch drivers. The signals were given by hand, the hatch tender getting his signals from the lower deck from the foreman Wicks. With the foreman in the hold on the lower deck were four other workmen and respondent. Two of these workmen got on top of each of the cases, fastening the cargo-hook to the slings, while two others and respondent would work on the floor steadying the cases during the process of removing them from the hold.

A model of the ship substantially showing the situation was introduced in evidence, was before the jury and brought here as an exhibit. The ring which broke was not produced at the trial, its absence being explained by the fact that appellant, some months after the accident, sold and transferred its business to another concern and later, when looking for the ring, could not find it.

The mode of operating the apparatus when unloading the cargo from the hold of the ship was substantially as follows: When the wire slings had been placed around opposite ends of the case, a ring, with two pieces of wire cable with small hooks or dogs on each end, connected with the slings, one dog on each sling; a cargo-hook was attached to the ring and this in turn was connected by swivels to a larger ring called a cargo-ring. To the upper swivel connecting the cargo-hook to the cargo-ring, was attached a swivel to which was attached a bull-rope; opposite the bull-rope was a midship-rope which was attached by swivel to the cargo-ring. The load, while being lifted, pulled downward on the cargo-ring, the bull-rope and midship-rope pulling oppositely; so that the strain was sustained by them when the load was raised by operation of the winches. In moving the case in question out of the hold into the square of the hatch, the

upper swivel attaching the cargo-hook to the cargo-ring broke or pulled apart which caused the tackle to fall upon respondent.

The ring or link which broke was about four inches across, six inches in length and composed of iron about three-fourths inch in diameter. After the accident, it was discovered that the ring had been welded together in a weld that was diagonal and curved, and that the weld, as the witnesses expressed it, "had not taken," for of the entire weld of about two and one half inches in length only about one fourth inch on the end of the curve was holding. Appellant's manager, himself, admitted that the weld had been opened so long it was rusty. He also said he could almost have spread it with his hands. It was also in evidence that, when the case was lifted from the floor, it was necessary to lift it five or six inches in order to get the rollers under it, but in this instance this rather long case was lifted fourteen or sixteen inches from the floor; in so doing it was shown that the bull-rope and the midship-rope were drawn more nearly to a level in respect to each other, thus pulling against each other, as well as sustaining the load, and that the higher the load was elevated, the greater would be the strain on the tackle. Some of the witnesses who had had long experience in that line of work testified that the raising of the load unnecessarily high intensified the strain, and that the accident to the hook or link was attributable to the increased strain unnecessarily placed upon the tackle.

Upon this last phase of the matter, appellant earnestly contends that it is an enlargement, or variance from the allegations of negligence. It is argued that the third specification of negligence was that appellant carelessly placed too great a strain on the link by attempting to hoist too heavy a load; that, by the

8

introduction of the evidence and the submission of that matter to the jury, a new ground of negligence was introduced, that of improperly handling the load in question, instead of confining the evidence within the allegation that appellant carelessly placed too great a strain on the ring by attempting to hoist too heavy a load.

But even if this is a departure from the allegations of the complaint, as it apparently is, there was no surprise claimed at the time on the part of appellant and no continuance demanded. Hence the error is not now available to appellant, since the pleadings would be deemed amended to conform to the proof. *Hubbard v. Hartford Fire Ins. Co.*, 135 Wash. 558, 238 Pac. 569, 240 Pac. 565.

It is also vigorously contended that there is a total failure of proof to sustain the first and second grounds of negligence in failing to provide suitable appliances and in failing to inspect the appliances furnished.

While it is true that there was no direct proof on the part of the respondent, which was probably impossible for him to furnish, that there was any failure to inspect the appliances furnished and there was evidence on the part of appellant of a system of inspection by a man called the "locker man" whose duty it was to inspect such apparatus, that he did inspect it and that the foreman in the hold inspected it in the morning before beginning work, the jury were not bound to believe these witnesses. By the evidence of witnesses for appellant, it was shown that this defective weld should certainly have been discovered had it been properly inspected.

This case has many similarities to that of *La Bee v. Sultan Logging Co.*, 47 Wash. 57, 91 Pac. 560, 21 L. R. A. (N. S.) 405; *Id.*, 51 Wash. 81, 97 Pac. 1104. In that

case a cable furnished by the master to be used for a certain purpose broke while being used for that purpose in a proper manner. In that case we observed:

"Instrumentalities intended for a particular purpose, and suitable and proper for that purpose, do not break when put to the use for which they are designed when used in a proper manner. So the converse of this proposition must be true. If the instrumentality does break when put to the use for which it is designed and used in a proper manner, it is evident that it was either defective in material or construction in the first instance, or has become so since it was put to use. Therefore, when the servant shows that the master furnished him an instrumentality to be used for a particular purpose, that he used it for the purpose intended in the manner intended, and that it broke when being so used and injured him, he makes out a *prima facie* case of negligence against the master." (Citing many cases.)

Of course, as we pointed out on the second hearing in the above cited case, the injury of itself proves nothing. It may have been the fault of the servant; but in a case where a servant eliminates any fault on his part by showing that the injury was caused by the giving away of an instrumentality with which to work while he was using it for the purposes intended in the manner directed, he shows *prima facie* that the fault is in the instrumentality for which the master is responsible.

Nor is that the same as to say that the master is an insurer of the servant's safety in such case. There must be proof sufficient to make a *prima facie* case of negligence on the part of the master, and no such negligence on the part of the servant as would constitute a proximate cause of the injury, before such servant can recover. *Patrick v. Spokane & Eastern R. & Power Co.*, 117 Wash. 317, 201 Pac. 23. But the evidence need not be direct and positive. It may arise from circum-

stances and inferences to be deduced from the conditions as shown. The same is true as to whether the master failed to exercise reasonable care in the selection of an apparatus or reasonable care in keeping it in a condition suitable for use. *Cleary v. General Contracting Co.,* 53 Wash. 254, 101 Pac. 888; *Riggs v. Northern. Pac. R. Co.,* 60 Wash. 292, 111 Pac. 162; *Lynch v. Ninemire Packing Co.,* 63 Wash. 423, 115 Pac. 838, L. R. A. 1917E 178; *Patrick v. Spokane & Eastern R. & Power Co., supra,* and cases quoted therein.

We conclude that there were sufficient facts and circumstances in the case at bar to take the case to the jury on the questions of failure to properly inspect and to provide reasonably safe appliances. See, also, The Remus, 17 Fed. (2d) 948; *O'Conner, Harrison & Co. v. Klingel,* 16 Fed. (2d) 460; The Heraldshaug, 20 Fed. (2d) 337; *The Schooner Robert Lewis Co. v. Kekauoha,* 114 Fed. 849.

The last cited case was somewhat similar to this case in that a chain furnished and used by the officers of a ship in unloading a heavy article, of which removal they had sole charge, was held to be *prima facie* evidence of negligence authorizing a judgment against the owner of the ship for damages, in the absence of proof of contributory negligence.

It is also contended that the court erred in instructing the jury that this case is governed by the provisions of the Federal Employer's Liability Act in instruction No. XII.

In connection with this complaint, it is also contended that, since the ship "Georgine" was a French ship and the casualty occurred on board her, the action is not one which is subject to the Federal Employer's Liability Act.

In support of the last proposition, cases are cited from the intermediate appellate court of New York,

which we do not care to follow since we cannot concur in either the reasoning or conclusions contained in them and the question has been decided otherwise by Federal courts. In *Zarowitch v. Jarka Co.*, 21 Fed. (2d) 187, Sheppard, D. J., refused to follow the New York cases, and held that an employee of a stevedoring company of New York, at the time he was injured in that port while engaged in loading cargo on a foreign ship, was not a foreign seaman, but entitled in an action against the employer to the benefit of the provisions of § 33 of the Merchant Marine Act.

Again in *Mahoney v. International Elevating Co.*, 23 Fed. (2d) 130, Moscowitz, D. J., also refused to follow the New York cases and held that § 33 of the Jones Act applies in the case of a stevedore who receives injuries on a foreign vessel in an American port while engaged in loading or unloading the same as an employee of an American stevedoring concern.

We concur in and approve of the holdings in the two Federal cases just cited.

This claim of error affects the question of the assumption of the risk. Appellant ably argues that, even under the Federal Employer's Liability Act, if applied to stevedores employed on American vessels, the employer is not an insurer; that this is well settled under the Federal decisions, a number of which are cited down to and including *Missouri Pac. R. Co. v. Aeby*, 275 U. S. 426, which reversed a decision of the supreme court of Missouri, 313 Mo. 492, 285 S. W. 965, sustaining a recovery against a railroad company upon the ground that the employer had performed his full duty toward the employee suing, and that the employee had full knowledge of the condition existing at the time of the injury, and could with reasonable care have avoided it.

In that case and others cited in the opinion thereto-

fore decided in that court, it was held that the case was governed by the Federal Employer's Liability Act, and the applicable principles of common law, as applied by the courts of the United States. It was also held that there was no liability in the absence of negligence on the part of the employer; that the employer was not an insurer of its employee's safety; that the measure of duty in such cases was reasonable care, having regard to the circumstances; that fault or negligence on the part of the employer is not to be inferred from the mere fact that injury occurred. See, also, *Toledo, St. Louis & Western R. Co. v. Allen,* 276 U. S. 165, also reversing the Missouri supreme court.

But these pronouncements do not differ from our own. Some of our cases, heretofore cited, stated the same principles. In fact, were that court, itself, to announce any different rule as to an employer being an insurer of the safety of his employee, we should not be bound to follow it; for we determine the common law within our jurisdiction for ourselves, and that is a question of common law. Until authoritatively overruled by a court having such power, we are, ourselves, bound by our own precedents in administering the common law. *State ex rel. Yates American Machine Co. v. Superior Court,* 147 Wash. 294, 266 Pac. 134.

Nor are we disposed to disagree with the conclusions reached in those cases, although the last mentioned case is extreme. We have reached the same conclusions ourselves in several cases, which we have already cited. But those cases and the cases therein cited do not settle the question here, except in a general way. It is true, as we have decided in cases too numerous to need citation, that the workman assumes two classes of risk: (1) the ordinary risks of the employment, that is, all risks inherent in the work; and (2) such extraordinary risks even though created by

the negligence of the employer, as are known by the employee or plainly observable. *Lundgren v. Pacific Coast Steamship Co.,* 103 Wash. 81, 173 Pac. 1023. And an ordinary risk in every employment involving the use of machinery or tools is the danger of being . injured because of latent defects. *Wilson v. Cain Lumber Co.,* 64 Wash. 533, 117 Pac. 246; *Stevens v. Hines,* 110 Wash. 579, 188 Pac. 917.

Under the Federal Employer's Liability Act, the defenses of contributory negligence, except in reduction of damages, and of negligence of fellow servants, have been abolished. The act abolishes the defense of assumed risk only when the accident is caused by the employer's violation of certain safety acts relating to carriers and have no relevancy to stevedores. In all other respects, the defense of assumed risk is left exactly as at common law. *Seaboard Air Line R. Co. v. Horton,* 233 U. S. 492.

These principles have also been recognized by us. *Swanson v. Oregon-Washington R. & Nav. Co.,* 92 Wash. 423, 159 Pac. 379; *Stevens v. Hines, supra.*

It remains then to apply the proper rule to this case. Respondent alleged that the accident was caused by a defect which was, or should have been discoverable by inspection, that is, a patent defect. This was denied. The evidence which we have previously referred to seems to us to show that the defect was reasonably discoverable by proper inspection and therefore it was a patent defect. Whether or not those were the facts was for the jury to decide.

It is complained here that the court refused to instruct the jury as requested by appellant, that respondent could not recover if he was injured in consequence of risks which he assumed; that an experienced workman assumes all risks incident to the work in which he voluntarily engages, including the risk of being injured

14

because of latent defects in the tools, apparatus, or appliances customarily used; and that a latent defect is a concealed or hidden defect or imperfection not discernible by reasonable examination such as the nature of the business reasonably permits.

The United States supreme court cases cited and relied upon, the case of *International Stevedore Co. v. Haverty*, 272 U. S. 50 (*Haverty v. International Stevedoring Co.*, 134 Wash. 235, 235 Pac. 360, 238 Pac. 581) and *Rasmussen v. Twin Harbor Stevedoring Co.*, 147 Wash. 260, 265 Pac. 1085, all fix the character of this case as one within the Federal Employer's Liability Act, and the Merchant Marine Act of the United States.

The premises being established that the common law defense of assumed risk remains unchanged by the Federal Employer's Liability Act, except in certain particulars not involved here, and that, under this rule, a workman assumes not only the ordinary risks inherent in the employment, but also assumes extraordinary risks, even though caused by the negligence of the employer, if those risks are observable, it remains to be determined whether, under the state of facts existing here, it can be held, as a matter of law, that respondent assumed the risk.

Respondent was a stevedore of six years experience. He had been working on this occasion in the same place for about two hours. During that period of time, from eight to fifteen cases of glass of varying sizes had been removed. They were all handled in substantially the same way, except that not as many lines were used in handling the lighter packages. Respondent's duty was to steady the case with his hands as it was being hauled forward from the place of stowage to the square of the hatch. There was no fixed or invariable height that each case should be raised above the floor. Each case was handled as circumstances required, de-

pending upon its shape, size and weight. This case was taller than the preceding one by about two feet. It was raised about fourteen inches off the floor.

It is argued that the size and weight of the case was plainly observable to respondent, who had his hands on it at the time; that the raising of the case fourteen inches off the floor was also plainly observable to him; that, while the case was in that position and at rest, respondent having his hands on it, the link broke, permitting the case to partly topple over and the hook and attachments to fall. It is then asserted that it avails nothing to say that these conditions created a greater strain on the apparatus; that respondent, as an experienced stevedore, was presumed to know all that experienced men in his line of work generally know; had the experience and opportunity at the time to enable him to know and appreciate the risk and danger there was in the operation in which he was then engaged, and assumed the risk as a matter of law: citing *Kahlstrom v. International Stevedoring Co.*, 141 Wash. 374, 250 Pac. 287, 256 Pac. 503; *Lundgren v. Pacific Coast Steamship Co.*, 103 Wash. 81, 173 Pac. 1023.

The cases cited do not fit this case. In this case, the facts adduced by appellant itself disclose that the link in the hook used in this operation, if in good order, was capable of sustaining a weight of as much as five tons. A number of cases had been lifted without accident. When this larger and heavier case was put upon the tackle and raised a greater distance from the floor than usual, causing a greater strain upon the tackle, in an instant the link broke. Respondent did not put himself in the way, nor had he any chance or time to get out of the way. The case dropped to the floor, toppled slightly over and leaned against a stanchion in the hold. Only the tackle that had broken loose

above, fell. No one, regardless of his skill and experience, could foresee it or guard against it.

■ It may be said that this discussion pertains only to negligence and contributory negligence. But the law is, as the court charged the jury (No. XI) and appellant accepted as the law of the case, that

"One of the duties which the employer cannot delegate is the duty to furnish reasonably safe tools and equipment. Another is to see that they are kept in reasonably safe condition."

The law is also well settled that the employee does not assume the risk of his employer's negligence or the negligence of his agents or employees in the nonperformance of a non-delegable duty. *Arneson v. Grant Smith & Co.*, 120 Wash. 98, 206 Pac. 960; *Mattson v. Carlisle Packing Co.*, 123 Wash. 243, 212 Pac. 179.

It seems to us, under the facts shown, wholly a question for the jury under proper instructions.

This brings us to the last assignments of error argued together by appellant, Nos. VI and VII.

■ The court instructed the jury (No. XII) that the case was governed by the Federal Employer's Liability Act, applicable to all employees on railroads engaged in interstate commerce and to seamen and longshoremen; that, under that act, every employer engaged in those kinds of work is liable in damages to any person suffering injury in the course of his employment as a result, in whole or in part, of the negligence of any of its other officers, agents or employees. It then referred to the fact that the jury may have been engaged in the trial of other damage cases in which they had been instructed that an employer is not liable in damages to an employee injured through the negligence of a fellow servant, and that that is a rule of law applicable in certain classes of

employment which, however, was not applicable in this case.

The next instruction (No. XIII) was a lengthy general instruction on the subject of assumed risk, latent and obvious defects and the like, and concluded with this statement:

"An employee does not assume the risks of dangers due to the negligence of another employee which he had no occasion to foresee or anticipate."

Appellant excepted to Instruction No. XII and to the above quoted portion of Instruction No. XIII.

It is insisted that Instruction XII is bad for two reasons: first, because the action is not governed by the Federal Employer's Liability Act as the court assumed. What we have heretofore said disposes of that question. Second, because, in Instruction XII, reference was made to the negligence of a fellow servant and in another portion of Instruction XIII, it was again charged that an employee does not assume the risk of injury due to negligence of another employee.

The first reference to the negligence of fellow servants was merely for the purpose of contrasting the present case with other cases in which the jurors might have been engaged to show the different rules of law applicable. As to the second reference to it in Instruction XIII, appellant asserts that there was nothing in the pleadings or the evidence to suggest the necessity of any instruction as to the negligence of a fellow servant and that the cumulative prejudicial effect of these erroneous instructions is apparent when it is recalled that the trial court refused to give any instruction whatever touching the rule that the employee does assume the risk of injury due to latent defects.

Appellant itself requested that instruction to the effect that an employee cannot recover damages against his employer if injured in consequence of what

is designated in law as an assumed risk; that the employee is held in law to assume all dangers which are necessarily inherent in the work, and which are not traceable to his employer's negligence, whether he knows of such dangers or not, and without regard to whether they are open, obvious or apparent; that this is because the employee is presumed to be paid wages commensurate with the dangers necessarily incident to his employment; that an employee also assumes the risk of all dangers which are actually known to him, or which are so open, obvious and apparent, that he should discover them by the reasonable use of his senses, even though such dangers may be due to the employer's negligence.

Appellant also requested an instruction to the effect that, if respondent was injured in consequence of risks which he assumed, he could not recover; that an experienced workman, as a matter of law, assumes all risks that are incidental to the work in which he voluntarily engages, including the risk of being injured because of latent defects in the tools, apparatus, or appliances customarily used in the service; that a latent defect is a concealed or hidden defect or imperfection not discernible by reasonable examination such as the nature of the business reasonably permits.

These instructions were correct statements of the law under our well-established rule that, where injuries to an employee were caused by a defect or danger which the evidence tends to show is known or in the exercise of reasonable care should have been known by the employer, the question should be submitted to the jury. *Kluska v. Yeomans*, 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121; *Mueller v. Dennis*, 83 Wash. 123, 145 Pac. 218, 39 C. J. 1155.

There being evidence on behalf of appellant of a system of inspection and of actual inspection by two

employees delegated thereto, that being a non-delegable duty of the master to furnish safe appliances and keep them safe and properly inspect them; and there also being evidence that a defect in the weld was one that should have been discovered by reasonable inspection, the questions of the negligence of the employees delegated to perform that duty, and whether they did in fact perform their duty, under the evidence, were for the jury. *St. John v. Cascade Lumber & Shingle Co.*, 53 Wash. 193, 101 Pac. 833; *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, 20 A. L. R. 671.

The court gave practically all of the instructions above requested, except that part defining what is a latent defect. In that respect, the court merely said that the employee is held in law to assume the risks of all dangers necessarily inherent in the work which are not traceable to the employer's negligence, whether he knows of such dangers or not, and whether they are open, obvious and apparent or not.

Respondent does not dispute that the requested instruction above referred to is correct in law, but merely contends that, in Instruction XIII as actually given, the court told the jury:

"That the employee is held in law to assume the risks of all dangers which are not traceable to his employer's negligence whether he knows of such dangers or not and whether they are patent or latent;"

and that another portion of the instruction given, to the effect that the employee is held in law to assume the risks of all dangers which are necessarily inherent in the work and which are not traceable to his employer's negligence, whether he knows of such dangers or not, and whether they are open, obvious and apparent or not, is sufficient to cover the issue involved.

It will be seen that the last portion of Instruction XIII above mentioned, merely covers the issue of as-

sumption of risk from dangers necessarily inherent in the work, and the preceding portion of the instruction, while referring to open and obvious dangers and to those not open and obvious, in no way defines what are latent defects.

The requested instruction defining latent defects being correct in law, and it being a vital issue in the case, it was the duty of the court to give the requested instruction or one similar to it clearly defining what would be a latent defect. This omission constituted a prejudicial error.

Because of the failure of the court to give a proper instruction as requested defining latent defect, the judgment must be and is reversed and remanded for a new trial in conformity with this opinion.

ASKREN and BEALS, JJ., concur.

MAIN, J., concurs in the result.

FULLERTON, C. J. (dissenting)—In my opinion there was no error in the instructions when read as a whole. I therefore dissent from the conclusion of the majority.