the other, and required more steam to operate it; but the steam was generated in a boiler which had been on the premises, and had not been furnished in connection with the separators.

The evidence falls far short of showing that Sloan, before the action was commenced, had reached the conclusion that plaintiff's machine was "the best all-around" machine, or that he so informed the defendants; and if he had reached that conclusion, it was a question whether it was an honest conclusion, in view of his interest in plaintiff's business. It is true the defendants did not offer to return the machine; but they gave orders to Sloan in the latter part of August not to use it, and the mere fact that it remained in their possession until about the 1st of October, under orders by them that it should not be used, is not necessarily indicative of a purpose on their part to accept it. In any aspect of the case, the question of acceptance was an important question to be submitted to the jury; and as, under the charge of the court, they have not necessarily considered that question, it follows that the judgment must be reversed.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

## LOSIE v. DELAWARE & H. CO.

(Supreme Court, Appellate Division, Third Department. January 4, 1911.)

1. CARRIERS (§ 316*)—PASSENGERS—INJURIES—NEGLIGENCE.

Intestate, a prosperous business man, of happy family relations and in good health, secured a lower Pullman berth in defendant's train, and undressed and went to bed about 1 o'clock, and was not seen again until his dead body was found between the rails some time afterwards. Intestate's hat and outer clothing were found at the foot of the berth, and the window at the head of the berth was closed, and a dust screen 6 inches high extended across the window at the foot of the berth; the sash being raised 12 or 15 inches above the top of the screen. The evidence tended to show that the vestibule door was out of repair, so as not to latch easily; but it was not shown that it was open, or that intestate was seen in the aisle after retiring, and no extraordinary lurching of the car was shown, and the porter testified that after fixing the dust screen in the window he did not raise it. *Held*, that the mere happening of the accident did not raise an inference of negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1283; Dec. Dig. § 316.*]

2. NEGLIGENCE (§ 121*)—RES IPSA LOQUITUR DOCTRINE.

The doctrine of res ipsa loquitur does not exempt plaintiff from affirmatively proving negligence, or circumstances making negligence a legitimate inference; not merely the happening of the accident, but the manner and circumstances thereof, making the doctrine applicable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 218, 225; Dec. Dig. § 121.*]

Appeal from Trial Term, Chemung County.

Action by Louie B. Losie, as administratrix of Chauncey B. Losie, against the Delaware & Hudson Company. From a judgment of non-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

suit, and an order denying a motion for new trial, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

David C. Robinson, for appellant.

Lewis E. Carr, for respondent.

SEWELL, J. The action was brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. At the close of the plaintiff's case the learned trial justice granted a motion for a nonsuit, and the plaintiff excepted. The appeal, therefore, presents the question whether, upon the evidence given, the plaintiff was entitled to have the case submitted to the jury.

Briefly stated the facts were that about midnight of July 10, 1907, the deceased, a man apparently prosperous in business, happy in his family relations, and in good health, boarded the defendant's train at Albany to go to Elmira. He paid for and occupied a lower berth in one of the Pullman cars. The last seen of him alive was about 1 o'clock, or a little later, when he went to his berth, undressed, and lay down. His dead body was found between the rails of the east-bound track near Esperance, a station 31 miles west from Albany. Afterwards, and as the Erie train, having the Pullman car attached, was nearing Elmira, the deceased was missed, and a search was made. His hat and all of his outer clothing were found hanging on a hook at the foot of the berth. The window toward the engine, and at the head of the berth, was closed. A dust screen 6 inches high, extending across the window at the foot of the berth, was in place, and the sash was raised 12 or 15 inches above the top of the screen. The evidence also tended to show that the vestibule door at the end of the car was out of repair, in such a way that it did not latch easily. The porter in charge of the car testified that he opened the window at the foot of the berth only far enough to insert the dust screen, and then closed it down tight, and that he did not raise it during the night. No evidence was given tending to show that the vestibule door was open, or that the deceased was seen in the aisle, or near the door, at any time after he went to his berth. No witness testified to any sudden or extraordinary lurching or movement of the car.

There was nothing to justify the claim of the plaintiff that the deceased fell or was thrown through the window, or that he met his death in consequence of the defect in the door. No witness was able to tell how he came to be on the track. There was an absence of any evidence on that point, so that the jury could only surmise in reference to it. The plaintiff failed to prove any fact or circumstance from which negligence could be legitimately inferred. The jury could not assume that the defendant was negligent from the mere happening of the accident. The doctrine of res ipsa loquitur was not intended to exempt the plaintiff from the burden of proving affirmatively negligence, or circumstances making negligence a legitimate, if not an irresistible, inference. In the language of Judge Cullen in Griffen v.

Manice, 166 N. Y. 193, 59 N. E. 926, 52 L. R. A. 922, 82 Am. St. Rep. 630, its "application presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence."

It is not the accident, but the manner and circumstances of the accident, that justifies the application of the maxim. The fact of the casualty and the attending circumstances may themselves furnish all the proof of negligence that it is necessary to offer; but when, as in this case, they do not, a plaintiff must prove facts and circumstances from which the jury may fairly infer negligence as the cause of the accident. "In no instance can the bare fact that an injury has happened, of itself and divorced from all surrounding circumstances, justify the inference that the injury was caused by negligence." Benedick v. Potts, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478; Griffen v. Manice, supra. We think that the court in the trial of the present case correctly interpreted this rule, and properly refused to permit the jury to speculate or conjecture as to how the accident occurred, or to guess that the plaintiff's intestate was free from contributory negligence.

It follows that the judgment and order should be affirmed, with costs. All concur.