plaintiff in his testimony admits that he attended a meeting of the Public Service Commission in 1905, and saw the plans for the changes in question, on a table, but was unable to examine them, owing to the crowd, and that he then wrote to one of the defendants, the New York Central & Hudson River Railroad Company's engineers, about the plans, and that the engineer visited him at his home about three years ago and showed him the plans, and that since that time he has watched the progress of the work. The engineer testified that he showed the plans to the defendant, and that they showed the nature of the work proposed. The plaintiff did not institute this action until February 3, 1911, and we do not find that the fact that the work had not been entirely completed at that time excuses the delay found by the trial court.

The judgment should be affirmed. All concur.

---

(152 App. Div. 444.)

BRAGG v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

1. NEGLIGENCE (§ 83*)—CONTRIBUTORY NEGLIGENCE—SUBSEQUENT NEGLIGENCE.

One must use due care to discover and avoid what may be reasonably expected in the course of his work will injure another, and he must in good faith use available methods to prevent injury to those discovered in peril; and where one, at fault or not at fault, finds another in peril by the latter's own fault or without his fault, he must use such active means as his best judgment prompts and his ability permits to prevent injury or to moderate it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 115; Dec. Dig. § 83.*]

2. MASTER AND SERVANT (§ 236*)—CONTRIBUTORY NEGLIGENCE—SUBSEQUENT NEGLIGENCE.

A flagman, required to flag a train, and the engineer, in charge of the train, owe to each other the duty to keep a lookout; and where the flagman, who was overworked in an emergency, sat down on the end of a tie at the point he was directed to flag the train and fell asleep, there was no liability for his injury by being struck by the train, in the absence of negligence of the engineer after seeing the flagman's peril.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 683, 723–742; Dec. Dig. § 236.*]

Appeal from Trial Term, Dutchess County.

Action by Lillian B. Bragg, administratrix of George Bragg, deceased, against the Central New England Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

I. R. Oeland, of Brooklyn, for appellant.

W. E. Hoysradt, of Poughkeepsie, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J. Plaintiff's decedent was sent to flag a work train. He sat down on the end of a tie, buried his face in his hands, and while apparently asleep was killed by a train he should have signaled. The plaintiff has recovered upon the theory that the engineer, entitled to be discovered and warned by the flagman, in the exercise of proper care should have himself discovered the delinquent flagman and saved him from injury.

[1] The case presents the novel feature of the man to be notified of danger, and so protected therefrom, held ultimately negligent for failure to discover and protect the signalman asleep. It would be a long and valueless task to discuss the authorities that under so many varieties of fact have dealt with the duty of the locomotive driver to keep a lookout and the result of his neglect to do so. The industry of the learned counsel for the appellant has brought many of them in view. And yet the law is not peculiar to railway companies, but rather is common to all persons exposed in the usual course of their business to collision with others, and simply is that they shall use due care to discover and to avoid what may be reasonably expected in the way or in the course of the work, and even in good faith and earnestly to use available methods to save or to investigate injury to those discovered in peril by whosesoever fault.

[2] The engineer's duty is to keep a watch ahead, maybe for the flagman, and especially for him where circumstances like those present indicate that he is probably on duty. The flagman's vital duty is to discover the train and to notify the engineer. There is no greater occasion for alertness and constant fidelity than that, where one man with his alarm flag stands between an approaching train and an obstructed track; but all his duty fully done goes for naught, unless the engineer, attentive, sees and obeys the signal. But, if one of the two, thus bound to mutual lookout, is injured by the neglect of the other, the common inquiry is whether the injured man contributed to the injury. Beyond that may be the final inquiry: Did the one discovering the other's peril make fair use of his opportunity to do him least injury? That question essentially has nothing to do with the previous conduct of either party. If A., at fault or not at fault, finds B. in peril by his own or without his own fault, A. should thereupon use such active means as his best judgment prompts and his ability permits to withhold the harm or to moderate it; for injury that can be so turned aside is, if done, inflicted by willful act, or at least with unwillingness to take pains to avert it.

But the doctrine has no application to the present case. The engineer had gone from and was returning to the wrecked train, and so the tender was ahead of the locomotive. Hence he was on the side away from the man asleep on the end of the tie. The track was unobstructed, and the whistle was duly sounded some 1,173 feet away. There is no evidence that the engineer was looking, otherwise than along the track, as he testifies that he was; but for some reason he did not discover the figure beside the track until he was some 150 feet from it, when he blew the whistle and applied the

emergency brake, but could not farther see the man on account of the interposed tender. But after the discovery of the bowed man, off the track and near the rail, the engineer did all within his power to stop the train, and the result illustrates the prompt effort. The court did not submit solely the question of the engineer's negli-. gence after seeing the flagman, but rather his general neglect to discover him. This went back to the question of the engineer's and flagman's primary duty, where neglect and contributory negligence negative recovery, for the charge is:

"The law is that, even though he was there carelessly, if by due diligence and ordinary care they could prevent the injury coming to him, they are bound to do so. * * * I leave to you this sole question, whether the company's servant could by the exercise of ordinary care have discovered this man on the track and prevented injury coming to him, even though he were guilty of negligence in the first instance."

But the duty of discovery was initial, and concurred with the duty of the flagman to protect himself, and no liability flows where each man culpably failed in his duty. Thereupon the other doctrine comes forward that the flagman, seen, may not be run down without attempt to succor, whether he was negligent or otherwise. But that doctrine has no place here, inasmuch as the engineer was not negligent after discovering the sleeper. It is going beyond all precedents and principles to hold that a railroad company is liable for injury to a flagman who sat down and slept, and was hit by an unwarned and thereby imperiled train, upon the theory that the engineer's failure to see him showed negligent search for him. The flagman in the emergency, as well as the engineer, was overworked; but that does not touch the controversy, and it was so ruled.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.