AMY L. WRIGHT, Administratrix, etc., of PETER J. WRIGHT, Deceased, Respondent, *v.* UNION RAILWAY COMPANY OF NEW YORK, Appellant.

First Department, May 25, 1928.

*Addison B. Scoville* of counsel [*A. C. Mayo* and *Frederic W. Frost* with him on the brief; *Alfred T. Davison*, attorney], for the appellant.

*Benjamin C. Loder*, for the respondent.

MARTIN, J.   The plaintiff's intestate was killed by a trolley car operated by defendant.   The accident happened at about eight-fifty P. M. on October 23, 1925.   The car was crossing the Madison avenue bridge over the Harlem river.   The decedent was sitting at a place in the roadway where there was no crosswalk or any apparent reason for his presence.

The photographs show an electric light attached to a post at the stationary end of the bridge gates and about fourteen to sixteen feet high.   The plaintiff's witness Spottke testified that it lighted the vicinity; and plaintiff's witness O'Connor testified that it shed rays of light over the car tracks and on the street.

The motorman, Caldwell, testified for the defendant that the light failed to shine down upon the concrete base along the inside

of the gate, because of a shadow cast by the gate. The defendant's witness Lyons also testified that there was a shadow over the concrete base.

There were two witnesses who testified to the happening of the accident, Tessie Grieco, a passenger who was standing on the front platform of defendant's car, and the motorman, Caldwell.

It appears that the plaintiff's intestate was sitting on the concrete platform or base supporting the center westerly gate, leaning forward facing the rails with his back toward the gates, his head resting upon his hands and his legs extending into the street toward the rails. The car wedged his body against the gate. The injuries received caused immediate death.

The witness Tessie Grieco says the decedent was first seen by her in this position when the street car was approaching him about forty feet away from the point of the accident. She was at that time on the front platform. The car at the time of the accident, according to the defendant's motorman, was moving at the rate of seven or eight miles an hour on a slight up grade. It continued to proceed until at least half its length had passed the man who was killed.

The witness Caldwell, defendant's employee, testified that he saw the decedent for the first time when he was about opposite the front platform of the car; that the witness then applied the brakes and stopped the car within fifteen feet. The reason given by him for failing to observe the man in time to avoid the accident was that the gate obscured the light at the particular point where the deceased was sitting.

The court charged the jury that under the doctrine of last clear chance the plaintiff might recover, basing that instruction on several decisions, including *Bragg* v. *Central N. E. R. Co.* (228 N. Y. 54).

In the *Bragg* case the Court of Appeals held that, where an engineer observed a person in a position of peril which he reached through his own negligence, nevertheless the defendant would be liable if its servant, after seeing him, could have avoided the accident.

The charge in the present case implied that the defendant might be held liable because the accident could have been avoided after the man was observed, or should have been, by its employee operating the car. The plaintiff's contention is that defendant was negligent in failing to discover plaintiff's intestate in time to avoid the accident. Such negligence would be offset by the contributory negligence of plaintiff's intestate.

It might be concluded from the charge that contributory negligence would no longer be a defense. This case is not to be confused with an infant's case or similar cases.

Mr. Justice Thomas stated the correct rule in *Bragg* v. *Central N. E. R. Co.* (152 App. Div. 444), where he said: " There is no greater occasion for alertness and constant fidelity than that, where one man with his alarm flag stands between an approaching train and an obstructed track, but all his duty fully done goes for naught unless the engineer, attentive, sees and obeys the signal. But if one of the two, thus bound to mutual lookout, is injured by the neglect of the other, the common inquiry is whether the injured man contributed to the injury. Beyond that may be the final inquiry, did the one discovering the other's peril make fair use of his opportunity to do him least injury? That question essentially has nothing to do with the previous conduct of either party. If A, at fault or not at fault, finds B in peril by his own or without his own fault, A should thereupon use such active means as his best judgment prompts and his ability permits, to withhold the harm or to moderate it. For injury that can be so turned aside is, if done, inflicted by wilful act, or at least with unwillingness to take pains to avert it. But the doctrine has no application to the present case."

Where a defendant discovers a person in a position of danger in time to avoid an accident, and fails to do so, the defendant may be liable. It is error, however, to charge the jury that defendant is liable because he failed to discover the person in such position of danger.

This also was clearly pointed out in *Bragg* v. *Central N. E. R. Co.* (152 App. Div. 444) where it was said:

" The court did not submit solely the question of the engineer's negligence after seeing the flagman, but rather his general neglect to discover him. This went back to the question of the engineer's and flagman's primary duty, where neglect and contributory negligence negative recovery, for the charge is, ' the law is that even though he was there carelessly, if by due diligence and ordinary care they could prevent injury coming to him, they are bound to do so.' "

The charge in that case was similar to the charge in the case now here for consideration. It was there said: " ' I leave to you this sole question, whether the Company's servant could by the exercise of ordinary care have discovered this man on the track and prevented injury coming to him, even though he were guilty of negligence in the first instance.' "

The appellate court stated the law to be as follows: " But the duty of discovery was initial, and concurred with the duty of the flagman to protect himself, and no liability flows where each man culpably failed in his duty. Thereupon the other doctrine comes

forward that the flagman *seen* may not be run down without attempt at succor, whether he was negligent or otherwise. But that doctrine has no place here, inasmuch as the engineer was not negligent after discovering the sleeper."

The defendant may not be held for negligence if it failed to discover the peril of the plaintiff until too late to avoid the accident.

The negligence of a person who places himself in a position of peril and the negligence of one failing to see him in that position may be described as concurrent negligence. The doctrine of last clear chance makes one liable only for willful negligence or because of failure or unwillingness to endeavor to avoid an accident, though it might be avoided.

It is undisputed that the defendant's motorman did all in his power to avoid the accident after discovering the dangerous position of plaintiff's intestate. The case was sent to the jury on the theory that there could be a recovery because the motorman should have seen the plaintiff's intestate in time to have avoided injuring him.

We are of the opinion that on this record there was no negligence or failure on the part of defendant's servant to save the plaintiff's intestate from harm after discovery of his perilous position; and, therefore, there can be no recovery under the doctrine of last clear chance.

The judgment should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, FINCH and O'MALLEY, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.