ELIZABETH LANE, Appellant, v. CITY OF BUFFALO, Respondent.

Fourth Department, May 6, 1931.

*Samuel Sapowitch* [*Bernard Swartz* of counsel], for the appellant.

*Charles L. Feldman, Corporation Counsel* [*Forbes F. Dougherty, Assistant Corporation Counsel*], for the respondent.

EDGCOMB, J.   In August, 1928, the plaintiff was visiting her aunt, who lived next to a public playground owned and maintained by the city of Buffalo.   While lawfully on her aunt's property she was hit in the head by an object which was hurled through the air.   She claims that the missile which struck her was a baseball, which was being used by two boys who were playing " catch " on the adjoining playground, and which was thrown wild by the pitcher.   She seeks to recover against the defendant because of its alleged negligence in failing to use reasonable diligence in the management of its playgrounds, and in permitting and authorizing baseball to be played in close and dangerous proximity to the highway and the adjoining property without proper fences or screens.   She was nonsuited at the close of her evidence.

I agree with Judge THOMPSON that, in maintaining its recreation centers, the defendant was acting in a corporate and not in a governmental capacity, and is, therefore, liable for its negligence. (*Van Dyke* v. *City of Utica,* 203 App. Div. 26; *Augustine* v. *Town of Brant,* 249 N. Y. 198.)

I am unable, however, to reach the conclusion that the defendant has been shown guilty of any negligence which caused the accident in question.

That plaintiff was hit by some missile is conceded.   But there is no evidence to show that the object was a ball.   The plaintiff herself frankly admits that she does not know what hit her.   Miss

Cullen, who was standing on the porch of the house at the time of the accident, testified that "something whizzed by," but that she did not see the object, and did not know what it was, or where it came from. A lad, Carl Neubeck, who was on the playground just prior to the accident, testified that plaintiff "was in the alleyway when the ball came over and hit her in the side of the face," but in the next breath he said that he did not see the ball go over the fence, and on cross-examination he admitted that the first he knew of the accident was when he saw the two boys, who were playing ball, run over to where the plaintiff was standing, and that he then went over there himself out of curiosity. No one else attempts to give any evidence as to just what caused the accident. The two boys on the playground were not called, although their identity was known, and although they were available to the plaintiff. If appellant was struck by a ball, its progress would have been arrested when it came in contact with her face, and the ball would naturally have fallen to the ground near where she stood. It is rather significant that no one saw it after the accident, if in fact it did the damage complained of.

The burden rests upon the plaintiff to show by a fair preponderance of the evidence that this accident was caused by the fault of defendant, and not by some cause for which the city was in no way responsible. While one might easily guess that plaintiff was hit by a ball thrown by boys on the playground, a guess, surmise or conjecture is not a sufficient basis upon which to find a verdict. (*Scharff* v. *Jackson*, 216 N. Y. 598; *White* v. *Lehigh Valley R. R. Co.*, 220 id. 131; *Ruback* v. *McCleary, Wallin & Crouse*, Id. 188; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 id. 90; *Taylor* v. *City of Yonkers*, 105 id. 202; *Searles* v. *Manhattan R. Co.*, 101 id. 661; *Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 id. 356, 366; *Losie* v. *D. & H. Co.*, 142 App. Div. 214; *Huff* v. *American Fire Engine Co.*, 88 id. 324.)

In *Scharff* v. *Jackson* (*supra*), plaintiff, who was loading bags of cement onto a truck, was injured by some of the bags falling on him. He claimed that the floor of the warehouse on which the cement was stored sagged because of the overload, and vibrated when the truck passed over it, causing the bags to fall. It was held that the plaintiff could not recover, if the accident could, with equal reason, be accounted for on any other theory; that it was not sufficient to show that the condition of the floor might have caused the accident.

In *White* v. *Lehigh Valley R. R. Co.* (*supra*) plaintiff's intestate was a brakeman in the employ of defendant. While engaged in his work he fell from a car and was killed. There was no direct

proof as to the cause of his fall, but it was claimed by the plaintiff that it was due to defects in the roof of the car. A nonsuit was sustained upon the theory that it was not sufficient for the plaintiff to show that such defects might have caused the fall, where it appeared with equal probability that it might have been occasioned by other causes.

In *Huff* v. *American Fire Engine Co.* (*supra*) plaintiff's intestate was caught by a revolving shaft and killed. A moment before he was standing by his foreman. The latter heard a noise, and looking around saw deceased on the shaft. It was claimed that his clothing came in contact with a set screw, which plaintiff alleged had negligently been left unguarded. While his clothes covered the coupling and screw, there was nothing to indicate how or what part of his clothing first became caught, or commenced to wind around the shaft. This court held that the conclusion that deceased was caught by the set screw was the result of pure speculation.

In *Losie* v. *D. & H. Co.* (*supra*) plaintiff's intestate boarded a train, and immediately retired to his berth in a sleeping car. His dead body was later found on the tracks. The evidence was silent as to how he met his death. His clothing was found in his berth. One window in the berth was raised twelve or fifteen inches above the top of the screen. The vestibule door at the end of the car was out of repair. The court held that the jury could only surmise as to how decedent met his death, and that a nonsuit for this reason was proper.

In *Taylor* v. *City of Yonkers* (*supra*) plaintiff slipped on a city sidewalk and was injured. Adjoining the walk was a bank of earth. For two years the action of rain and frost had dislodged sand and gravel until the flagging was entirely covered, the deposit sloping one inch to the foot from the outer edge to the curb. Snow and ice had accumulated upon this slope, but sand washed from the bank prevented it from being dangerous. A rainfall washed away the sand, and a cold snap followed, which resulted in the entire walk being covered with a new surface of ice. In an action to recover damages for a fall at this point, it was held, in the absence of evidence showing that the slope of the walk was a concurrent cause without which the accident could not have happened, that plaintiff was not entitled to recover.

If plaintiff relies upon circumstantial evidence to show that she was hit by a baseball used by children on the playground, she must produce positive proof of facts from which such inference can logically be drawn. The circumstances themselves must be shown, and not left to conjecture, and it must appear that the

inference sought is the only one which can fairly and reasonably be drawn from the facts. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90.)

Assuming, however, that there is sufficient evidence from which a jury could find that the plaintiff was hit by a baseball thrown from the playground next door, there is nothing which warrants a finding that defendant violated any duty which it owed to the plaintiff.

It does not appear that any similar accident had ever occurred at this point, or on any of the other playgrounds in the city. There is no evidence that children had been permitted to play baseball upon these grounds before this occasion. These two boys had been playing "catch" but a very short time. The only witness who gives any testimony upon that subject would not say that it was longer than two minutes. While it is true that during this time the ball was thrown over the fence on several occasions, and that it hit the adjoining house, and while the supervisor of the playground sat some sixty feet away, and may possibly have witnessed these wild pitches, I do not think that she can be said to have violated her duty because she did not immediately stop the game. Negligence is to be gauged by the ability of one to anticipate danger. The test of actionable negligence is not what could have been done to have prevented a particular accident, but what a reasonably prudent and careful person would have done under the circumstances in the discharge of his duty to the injured party. Failure to guard against a remote possibility of accident, or one which could not, in the exercise of ordinary care, be foreseen, does not constitute negligence. (*McPherson* v. *City of New York*, 204 N. Y. 430, 433; *Horan* v. *Hastorf*, 223 id. 490; *Beltz* v. *City of Yonkers*, 148 id. 67; *Cleveland* v. *N. J. S. Co.*, 125 id. 299; *Loftus* v. *Union Ferry Co.*, 84 id. 455; *Thompson* v. *N. Y. C. & H. R. R. R. Co.*, 164 App. Div. 117; *O'Sullivan* v. *Knox*, 81 id. 438; modfd. as to form only and affd., 178 N. Y. 565; *Ryan* v. *Cortland Carriage Goods Co.*, 133 App. Div. 467; *Creswell* v. *United Shirt & Collar Co.*, 115 id. 12; *Favro* v. *Troy & West Troy Bridge Co.*, 4 id. 241; *McKenzie* v. *Waddell Coal Co.*, 89 id. 415; *Di Biase* v. *Ewart & Lake, Inc.*, 228 id. 407; affd., 255 N. Y. 620.)

The city was not bound to anticipate danger to persons lawfully on adjoining property, if two small boys were permitted to play catch on this playground. There was nothing inherently dangerous about the game. It is common knowledge that a similar sport is indulged in by boys upon the public streets and vacant lots in every city and village, ofttimes in thickly populated centers, and no one considers that danger is liable to ensue to the public,

if the game is allowed to continue. This is not the case where a ball game is permitted to be played on grounds near a public street, and where balls are batted long distances with considerable force, and are liable to strike and injure persons on the highway, as was the case in *Lamm* v. *City of Buffalo* (225 App. Div. 599). Here the ball was simply thrown by one boy to another. The force and speed of the ball under such circumstances is much less than it would be if struck by a bat.

If knowledge is brought home to the city that any sport conducted on its playgrounds has caused, or is likely to cause, injury to persons lawfully on the highway or on adjoining property, then undoubtedly it would be the duty of the municipality to use reasonable care to obviate such danger, and, if necessary, to stop such games, and if it failed so to do, it would be negligent. A continuous repetition of something which would be perfectly proper, if indulged in on only one or two occasions, might constitute negligence, or even a nuisance, if continued indefinitely.

The mere failure of the city to prevent a single dangerous act of some child or children on its playgrounds, even though such act results in injury to a person on the adjoining highway or adjacent property, does not make the city liable where there is nothing to show that the city had reason to suppose that the act would be committed. (*Fletcher* v. *Baltimore & Potomac R. R.*, 168 U. S. 135, 138.)

To hold the city liable under the circumstances disclosed by this record, because the superintendent in charge of this playground did not instantly stop these two boys from playing an innocent game of catch, but permitted it to continue for a few minutes, is, to my mind, imposing upon the municipality an unreasonable burden. I do not think that this unfortunate occurrence is anything which the city, or its employees, could have foreseen in the exercise of reasonable care.

For the reasons stated, I think that the trial court was right in refusing to send this case to the jury.

All concur, except THOMPSON, J., who dissents in an opinion and votes for a reversal on the law and for granting a new trial. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

THOMPSON, J. (dissenting). Defendant maintains a public playground on the south side of High street in the city of Buffalo. On the same side of the street and next west of the playground there is situate a one-family frame house with a driveway and garage on the west side of it and a narrow space about two feet wide between its east side and the west line of the playground lot. Across the

whole front of the house there extends an open porch. Between the two lots the city maintains a wire fence about four feet high. Sometime between seven and seven-thirty o'clock on the night of August 20, 1928, plaintiff stepped out of a door in the west side of the house and walked along the driveway until she was opposite the west end of the porch when she was struck on the right side of her head by some flying object and severely injured. At this time there were two boys playing catch on the playground, one wearing a catcher's mit, standing with his back to the fence, before mentioned, at a point opposite the porch, and the other wearing a pitcher's glove standing at a point in line with the porch and his companion, a short distance away. They were first observed so occupied at about a quarter before seven o'clock. When plaintiff was struck the boys immediately ceased their playing and came to her assistance. In the course of their game the ball was seen to go over the fence and hit the house several times. At the time of the accident there were persons standing on the porch who observed something whizzing by them and heard it knock just as plaintiff was hit. Another person saw the ball there just after plaintiff was struck. It appears that while the two boys were playing catch, Miss Crehan, a person accustomed to supervise the playground, was in attendance and was sitting in a chair about sixty feet from them. Upon proof of these facts the court at the end of the plaintiff's case granted defendant's motion for a dismissal of the complaint and a nonsuit on the ground that there was a failure of proof of negligence against the city, or that the object which struck plaintiff came from the playground. In this I think the learned court fell into error, the evidence presenting questions of fact and the inferences to be drawn from facts positively proved (*Warner* v. *N. Y., O. & W. R. Co.*, 209 App. Div. 211, 213) as to the cause of the accident and defendant's negligence which should have been submitted to the jury.

The establishment of a playground is not a public duty imposed upon a city and it does not act as an agent of the State when it avails itself of the privilege of maintaining it. In such case it acts as a legal individual voluntarily assuming a duty for the benefit of a locality, and the undertaking of such a duty includes the taking on of the burdens incident thereto. (*Augustine* v. *Town of Brant*, 249 N. Y. 198.)

In the maintenance and operation of a playground a city is required to use care to prevent injury to children, who frequent it and participate in the games and pastimes for which provision and opportunity are there found, from dangers reasonably to be anticipated. It owes the same duty to persons rightfully using a drive-

way, path, way or place, upon private premises which are located so close to a playground that the playing of any game or the practice of any other activity thereon will render the proper exercise of such uses dangerous.

The city chose to maintain this playground and provided a supervisor who was in attendance. Whether she observed the boys at their game, situated as they were, so close to this house, and the flight of the ball over the fence and against the house, and whether or not she was negligent in failing to stop it or request the boys to go to some other part of the playground for their game were questions of fact which should have been submitted to the jury. The mere sight of the boys, located and engaged as they were, would at once impress one with the imminent danger it brought to persons occupying or likely to be on the porch of the house so near by. Especially would this be true if such a one were in charge of the playground, with the duty to observe and know what was there going on, and to apprehend and guard against dangers likely to occur, thereby imposed. In this case the supervisor of the playground had abundant opportunity, in the exercise of reasonable care, to have seen and to have at once corrected the condition. An instant of perception and warning would have avoided the accident. Thus the questions of time and notice to the city are fully covered.

Municipalities as well as courts are bound to know that the game of baseball in its varied and well-known forms and processes is and ever will be played on every available playground by the boys and ofttimes girls of America. That it involves certain dangers which require regulation and supervision in order that harm may not come to persons, who, like this plaintiff, are put in positions of danger by it, without negligence on their part, is equally obvious. In the circumstances of this case, it seems to me that it is for a jury to say whether or not the city failed in its duty to the plaintiff, and, if it did, and the injuries suffered by her were caused by its negligence, it is liable. (*Van Dyke* v. *City of Utica*, 203 App. Div. 26; *McCarton* v. *City of New York*, 149 id. 516, 519; *Lamm* v. *City of Buffalo*, 225 id. 599.)

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Judgment affirmed, with costs.