ANNA SROGI, as Administratrix, etc., of WALTER SROGI, Deceased, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, March 11, 1936.

*Hiscock, Cowie, Bruce & Lee* [*H. Duane Bruce* of counsel], for the appellant.

*Oliver D. Burden* and *Russell E. Harrington* [*D. Daniel Pananicles* of counsel], for the respondent.

LEWIS, J.   On the morning of May 21, 1934, plaintiff's intestate was operating a Ford truck from which he was making house-to-

house deliveries of baked goods in and near the village of Solvay, N. Y. His route was along Milton avenue, which, after passing through the village, extends westerly paralled to and sixty feet south of defendant's single-track railroad known as its Auburn branch. Reaching a point less than one mile west of the village, the decedent turned into Gere's Lock road which leads from Milton avenue northerly over defendant's right-of-way. When he was about to pass over the defendant's track at grade it is claimed his motor "stalled" and for a period of ten seconds the truck stopped with its front wheels over the southerly rail. Meantime a passenger train was approaching the crossing from the east. With his truck thus placed in a position of danger, the decedent was seen to open the cab door toward the approaching train in an apparent effort to extricate himself — but too late. His death followed the impact.

The proof is not disputed that the day was clear; that after the decedent had turned from Milton avenue and was passing northerly along Gere's Lock road toward defendant's right-of-way, the short stretch of intervening highway was level and that from it he was afforded an unobstructed view to the east along defendant's track for more than 1,000 feet. Furthermore, the record leaves no doubt that as defendant's train neared the crossing both whistle and bell were sounded which gave suitable and timely warning of its approach. These facts, with others disclosed by the record, lead us to conclude that the peril in which the decedent was placed was due to his own lack of care which will defeat a recovery in this action unless the legal doctrine presently to be considered is made applicable by other facts. (*Schrader* v. *N. Y., C. & St. L. R. R. Co.*, 254 N. Y. 148; *Crough* v. *N. Y. C. R. R. Co.*, 260 id. 227, 231.)

The trial justice submitted to the jury the question whether there was proof of actionable negligence by the defendant under the doctrine of "the last clear chance." That principle of law, which has also been termed the doctrine of "subsequent negligence," permits a recovery by a plaintiff who, by his own lack of care, may have placed himself or his property in a position of danger, provided there is proof of knowledge of plaintiff's peril by the defendant in time to avoid the injury complained of and a failure by the defendant to use reasonable means to avert the consequence of plaintiff's own negligence. It has been said that this doctrine " is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril, in which event there must be reasonable effort to counteract the peril and avert its

consequences." (*Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 N. Y. 206, 208; *Storr* v. *N. Y. C. R. R. Co.*, 261 id. 348; *Wright* v. *Union R. Co.*, 224 App. Div. 55; affd., 250 N. Y. 526. Cf. American Law Institute, Restatement of the Law of Torts, §§ 479, 480.) It is important to note that, as applied in this jurisdiction, this doctrine " is predicated upon the knowledge of the *peril* being brought home as an actual fact to the person charged with the subsequent negligence. It is not sufficient to prove that the defendant ought to have discovered or should have discovered the deceased's perilous situation by the exercise of reasonable or ordinary care. It is what the defendant did or failed to do after acquiring knowledge of the peril that constitutes the breach of duty." (*Panarese* v. *Union R. Co.*, 261 N. Y. 233, 236.)

Testing the record by these rules we find that, although defendant's proof is to the contrary, there was evidence offered by the plaintiff from which the jury might have found that before defendant's train reached the crossing the decedent's truck was stopped at the southerly rail for a period of ten seconds. This evidence, under the rule already quoted, prompts the inquiry whether there was proof that defendant's engineer or fireman had knowledge of decedent's peril in time to avert the fatal consequences of his own negligence. Our examination of the record upon that subject convinces us the trial justice correctly charged the jury that " there has not been any witness produced who testified that the engineer or fireman in charge of the train actually saw the truck stopped upon the tracks in time to have avoided the accident."

We believe, however, that the trial court erred in that portion of the charge in which the jury was instructed: "You will also take into consideration whether or not the whistle was blown constantly for 600 or 700 feet before the train reached the crossing and, if so, why was it being blown constantly by the person in charge of the train. If you find that the whistle was blowing constantly for 600 or 700 feet or more before the train reached the crossing then you may infer from that fact that the engineer saw the truck upon the tracks during the time the train traveled that distance."

We recognize the rule that " Knowledge [by the defendant of plaintiff's peril] may be established by circumstantial evidence." (*Woloszynowski* v. *N. Y. C. R. R. Co.*, supra, pp. 208, 209; *Bragg* v. *Central N. E. R. Co.*, 228 N. Y. 54.) However, we do not find evidence which justifies that portion of the charge last quoted.

The defendant's engineer and fireman testified that when their train passed the whistling post located 1,382 feet east of the

crossing, the engineer started to sound the usual crossing signal — " two long and two short blasts of the whistle "— and that the four blasts, sounded in the cadence indicated above, did not end until the train reached the crossing. This testimony does not conflict with that of a witness called by the plaintiff who was driving westerly on Milton avenue. He testified that upon reaching a point 700 to 800 feet east of the intersection with Gere's Lock road, he heard the " first whistle " from defendant's train which was then back of him. He described the blast as " kind of a long whistle." The train, which was running parallel to his own course, moved up even with his position and when the locomotive was " just by me a little bit " he heard " the second blowing of the whistle." He was then about 500 feet from the crossing. Then followed a " series of whistles "— " short blasts "— as to which he states, " The last blast of the whistle was continuing when [we] went onto the crossing." When asked by the court whether the whistles were " continuing or intermittent blasts " the witness answered, " They were intermittent." In answer to a question by counsel for the plaintiff whether any length of time elapsed between the blowing of the whistle he stated: " Just enough to know it — just it was a different whistle." The only other witness who gave proof as to the crossing signal was a woman, called by the plaintiff, who — at the time of the accident — was working in her garden on the north side of the track and less than seventy-five feet from the crossing. She testified that as the train approached " the usual whistle " was sounded. She first heard " three long whistles " at a point which the record fixes as approximately 900 feet east of the crossing. When the train reached her premises and was about to pass over the crossing, she heard another whistle. It clearly appears from her testimony that the signal was not a constant blowing but there were four blasts of the whistle, the first of which was sounded at least 900 feet from the crossing and the last was heard as the train finally reached it.

We find no testimony which could afford a proper basis for the inquiry suggested to the jury by the trial court's charge —" whether or not the whistle was blown constantly for 600 or 700 feet before the train reached the crossing; " likewise there is no proof which justifies an inference " that the engineer saw the truck upon the tracks during the time the train traveled that distance."

The inferences fairly to be drawn from the evidence do not point to the conclusion which the plaintiff seeks to establish therefrom, viz., that the manner in which the whistle was sounded is proof that defendant's engineer had knowledge of decedent's

peril in time to avert the catastrophe which followed. As we read the evidence it may, with equal assurance, be accepted as proof that the usual crossing whistle was sounded without knowledge by the engineer of the danger in which the decedent was placed. " It is entirely true that a material fact in a civil  *  *  * action may be established by circumstantial evidence, but the circumstances must be such as to lead fairly and reasonably to the conclusion sought to be established and to exclude any other hypothesis fairly and reasonably. It has been said that circumstantial evidence consists in reasoning from facts which are known or proved, in order to establish such as are conjectured to exist, but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture.  *  *  *  In order to prove a fact by circumstances there should be positive proof of the facts from which the inference or conclusion is to be drawn. The circumstances themselves must be shown and not left to rest in conjecture, and when shown it must appear that the inference sought is the only one which can fairly and reasonably be drawn from these facts." (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 93; *People* v. *Suffern*, 267 id. 115, 127; *Lane* v. *City of Buffalo*, 232 App. Div. 334, 337; *Love* v. *Baltimore & Ohio Railroad Co.*, 244 id. 72, 76.)

Under the court's charge we cannot say that the verdict, which is now challenged, does not rest solely upon circumstantial evidence, the fair and reasonable inferences from which do not point to defendant's fault as the proximate cause of the accident; certainly they do not exclude every other reasonable hypothesis.

It follows that the judgment and order from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.