Alexander Del Giorno, J.
This is a claim filed by the Public Administrator of the County of New York, as administrator of the goods, chattels and credits of Amelia Keegan, deceased, to *832 recover damages for pain and suffering caused the decedent by the alleged negligence of the State.
The decedent was admitted to Pilgrim State Hospital by order of a Justice of the Supreme Court on April 28,1955. The medical examiners at Bellevue Hospital diagnosed her condition as chronic brain .syndrome; they stated that she suffered from somatic delusions, that she was illogical and withdrawn, had the usual hallucinations, was totally deteriorated mentally, had no memory or judgment, needed chronic custodial care and might possibly injure herself and others. Dr. H. H. Gronda of Pilgrim State Hospital, examined her at the time of her admission thereto and reported, among other things, that “ She is an 89 year old, white woman whose general physical condition is fair for her age. She shows no evidence of contagion. She sits in a wheel chair when interviewed and appears to be feeble and gives the impression of being distressed * * * She shows very little interest in her surroundings * * * is quite confused, disoriented and seems to understand very little of what is asked her. ’ ’
On April 30, 1955, a report was made by Dr. Clifford, which indicated that she appeared to be rather markedly confused and in poor contact with her environment; that she was generally feeble and had to be assisted about the ward, although she was ambulatory; that she was disoriented in all spheres and that her memory was markedly impaired.
The diagnosis of Dr. Gibbon, who attended her, which was .finalized on May 9, 1955, the date of claimant’s death, was that she sufferéd from senile psychosis, simple deterioration.
Upon her admission to Pilgrim State Hospital, she was assigned to Ward 24-4, which is a ward for older ladies occupying part of the second floor and which is not a violent ward.
On May 4, 1955, at' about 1:30 p.m.; Mrs. Keegan was taken by Claudia Delmor, an attendant, in a wheel chair to the rotunda preparatory to being taken to another floor for dental examination, which is part of the admission process. The rotunda is a foyer, 25' x 25', upon which all areas of the hospital open. The dental office is on the lower floor of the middle wing. Miss Delmor left decedent in the rotunda in the wheel chair and proceeded to get another patient for dental treatment, who was standing about 8 feet away from -the point where Mrs. Keegan was in the wheel chair. She was to bring this other patient, who was able to walk, and Mrs. Keegan to the dental office. At about the time Miss Delmor reached the other patient, and while her back, was toward Mrs. Keegan, decedent rose from *833 her wheel chair and fell. She had not been strapped in the chair. Miss Delmor then called Mrs. St. Clair, who was in charge and who was in the office off the foyer. The latter had heard the fall and came while Miss Delmor was kneeling beside Mrs. Keegan. Mrs. St. Clair then called a doctor, who examined the patient. At the time of the accident, there were 77 patients in the ward and 7 attendants.
Dr. Gonda, in his report of the accident, related that the patient had fallen out of the wheel chair, and that physical and X-ray examinations revealed a fracture through the distal end of the left radius; also fractures in satisfactory position through both rami of the left pubic bone. Mrs. Keegan’s condition became worse steadily, and on May 9, 1955, she died. The immediate cause of her death was certified by Dr. Gibbon as pulmonary edema due to bronchopneumonia and arteriosclerotic heart disease. Other conditions, labeled noncontributory, were fracture of the left pubic bone and fracture of the left radius, and senile psychosis, simple deterioration.
Dr. Hyman Barahal, associate director of Pilgrim State Hospital since 1953, and a psychiatric specialist for 25 years, testified that it would be unsound medical practice to strap a patient in a wheel chair. He stated that he would never advise doing so, for the reason that if the chair tips, the patient has no chance to escape. It was his belief that the number of attendants on duty on the day of the .accident was more than adequate. He stated further that the reason Mrs. Keegan was put in a wheel chair was because she was confused, and that a statement in the hospital record to the effect that the patient might injure herself is the usual statement made by the hospital as to.all patients certified for admission, and does not indicate dangerous tendencies.
The claimant contends that Miss Delmor and Mrs. St. Clair were negligent in leaving the decedent in the wheel chair for the period of time involved, and that the State was negligent in that decedent was not strapped in the wheel chair.
The degree of care to be exercised is measured by the physical and mental ailments of the inmate as known to the hospital officials, physicians and employees (Scolavino v. State, 187 Misc. 253, mod. 271 App. Div. 618, affd. 297 N. Y. 460). The various diagnoses made of Mrs. Keegan indicated that she was 89 years of age, feeble but ambulatory and that she suffered senile psychosis, simple deterioration. On the day of the accident, she had been taken to the rotunda of the hospital prior to being taken to the dental office. When Miss Delmor left her in the *834 wheel chair to get another patient for dentistry, who was standing’ about 8 feet away, she could not be held to have had any reasonable expectation that Mrs. Keegan might rise from her wheel chair and fall, nor, under the circumstances, can Mrs. St. Clair be held to have had any reason to apprehend the occurrence of such an event. The officers and employees of a hospital are required to exercise toward patients such reasonable care and attention for their safety as their mental and physical condition, if known, may require, and should be in proportion to the physical or mental ailments of such patients. (Weihs v. State of New York, 267 App. Div. 233; Shattuck v. State of New York, 166 Misc. 271, affd. 254 App. Div. 926.) The hospital and its attendants have accorded to the deceased the care and attention proportionate to her physical and mental ailments. Her physical and mental condition could have given the hospital no warning of her precipitate act in rising from her chair. Failure to guard against a remote possibility of accident, or one - which could not in the exercise of ordinary care be foreseen, does not constitute negligence. (Lane v. City of Buffalo, 232 App. Div. 334, 338.) The patient had adequate attention, the assistant director of the hospital testifying that the number of attendants on duty on the day of the accident, 7 attendants for 77 patients in the ward, was more than adequate. To hold that there was inadequate supervision would be to require the hospital attendants to be present with the patient every single moment of every day and night, which obviously would be far beyond the realm of reasonable care.
So far as the failure to strap the patient in a wheel chair is concerned, the court is satisfied from the evidence adduced that the hospital was under no obligation to do so. Dr. Barahal, who has been a psychiatric expert for 25 years, testified that it actually would have been unsound medical practice to strap a patient in a wheel chair, for the reason that if the chair tips, the patient is powerless to protect himself in an ensuing fall. No evidence was introduced by claimant to show that it was the practice at the hospital to strap such a patient in a wheel chair or that any of the wheel chairs had straps, or that sound medical practice required it, or that such was the usage and custom prevalent in mental institutions or that failure to strap violated a law, regulation or ordinance. 1 ‘ In the absence of such evidence the jury, looking back at the event, may not base a finding' of fault upon conjecture as to what means could have been adopted to avoid the accident. ‘ The failure on the part of a defendant to observe some duty of care, or precaution, *835 owing to the plaintiff, generally or specifically, will constitute negligence and will give rise to a cause of action for resultant injury; but it should be established by the evidence, directly, or upon clear inferences from the facts. It cannot rest upon conjecture simply.’” (Halverson v. 562 W. 149th St. Corp., 290 N. Y. 40, 43, citing Holland House Co. v. Baird, 169 N. Y. 136, 142.)
The claimant has failed to establish that the proximate cause of the injuries to the deceased was a failure to exercise reasonable care in the maintenance, care, control and supervision of the deceased.
The claim is dismissed.
This memorandum constitutes the decision of the court in accordance with the provision of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.